Hinkle v. Lovelace.

## LUCY M. HINKLE, Appellant, v. JONATHAN LOVELACE.

**Division One, May 29, 1907.**

1. **PLEADING: Divorce: Non-Residence: Absconding: Contradictory.** Under the statute of 1865, which said that "in suits in divorce if plaintiff, or other person for him, shall allege in his petition that defendants are non-residents of the State, or have absconded or absented themselves from their usual place of abode in this State, the clerk shall make an order of publication," etc., plaintiff filed her petition for divorce, alleging therein that her defendant husband "is a non-resident of this State or he has absconded or absented himself from his usual place of abode in this State." *Held,* that these allegations in the petition were contradictory, and destroyed each other, and the petition did not state a cause of action, and for that reason the decree was void. [Per **Woodson, J.,** with whom the other judges do not concur.]

2. **DIVORCE: Affidavit by Another.** Under the statute of 1865 the petition in a divorce suit was required to be supported by the affidavit of plaintiff. Such affidavit could not be made by a next friend; and a divorce decree founded on a petition not supported by the affidavit of plaintiff, although sworn to by another, was void.

Hinkle v. Lovelace.

3. ———: Affidavit: Sufficiency: Collusion. In a divorce suit an affidavit to the effect that "the complaint is not made out of levity, or by collusion, fear or restraint between the plaintiff and defendant," etc., is jurisdictional, and the absence of such an affidavit is fatal to a decree; and that affidavit can be made only by plaintiff, whether she is a minor or not.

4. ———: Subsequent Verification of Petition. A verification by plaintiff of her petition in the divorce suit on the day of final decree, by attaching thereto her own statutory affidavit, did not cure the prior defects of a petition supported by the affidavit of another in ordinary form or the absence of any affidavit as to collusion, etc., if the defendant was not then in court.

5. PLEADING: Service by Publication: Amendment. An amendment of the petition in a material matter after publication of notice, where service is obtained by publication, is void and not binding on defendant, if he does not appear.

6. ———: Divorce: Verification. The verification required by statute to be made and annexed to the petition in a divorce proceeding, is a material matter, a matter of substance, so that the court acquires no jurisdiction of the cause without it.

7. LIMITATIONS: Divorce: Subsequent Marriage: Minority. Plaintiff was born in June, 1850, and was married in 1865, and in 1867 a decree was entered divorcing her from her husband, who died in 1872, which decree was void because not supported by her own affidavit and because there was no affidavit of absence of collusion, etc. She again married in January, 1868, and lived with that husband until 1903. In January, 1865, while still under age, she made a deed to the land for which she now sues, and another in October, 1868, after she reached her majority, but neither was acknowledged separate and apart from her husband. Held, that the divorce decree being void, her subsequent marriage was void, and she had a complete cause of action against the defendant upon the death of her husband in 1872, and is barred by both the ten-year and the twenty-four-year Statute of Limitation.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) The petition for divorce was sworn to by plaintiff's stepfather, the defendant in this action, who

was described in the caption of the petition as the next friend of plaintiff and who acted as such next friend in the divorce proceeding under appointment by the court in which the petition was filed. This was a sufficient compliance with the divorce statute requiring an affidavit to accompany the petition. In such cases it is proper for the next friend to make any affidavit necessary to be filed by plaintiff at the commencement, or during the progress, of the suit. Leftwick v. Hamilton, 9 Heisk. (Tenn.) 310; Deford v. State, 30 Md. 179; Strode v. Clark, 12 Ala. 621; Wilson v. Me-ne-chas, 40 Kan. 648; Tripp v. Gifford, 155 Mass. 109; Raming v. Railroad, 157 Mo. 515; sec. 9, ch. 161, G. S. 1865. The very purpose of the statute requiring an affidavit of the plaintiff in a divorce suit, to the effect that the action is not brought by collusion, is to protect the court from imposition and abuse of its jurisdiction and process, as well as for the protection of society; and the next friend in this divorce suit being the stepfather of the infant wife and familiar with all the facts pertaining to the marital relations between her and her then husband, Edmonds, was a very proper person to be appointed by the court to act as next friend and institute and prosecute the suit in her behalf.   (2)   A divorce obtained on a petition stating the plaintiff's cause of action and to which there has been no affidavit annexed is not void, but is simply voidable and can not be attacked in a   collateral proceeding.   McCraney v. McCraney, 5 Iowa 254.   (3)   The defendant having accepted from the plaintiff and her husband, Daniel Hinkle, the two deeds to himself, of date January 27, 1868, and December 19, 1868, executed during the lifetime of Daniel Edmonds, each deed describing the plaintiff and said Daniel Hinkle as husband and wife, and having entered into possession of the lands in controversy under said deeds, and having claimed possession thereunder from the date of their execution, is estopped by

the recitals in said deed from questioning the validity of plaintiff's divorce from her first husband, and from questioning the validity of plaintiff's second marriage. Orthwein v. Thomas, 127 Ill. 554; Pinckard v. Melmine, 76 Ill. 453; Thrower v. Wood, 53 Ga. 458; Dickson v. Anderson, 9 Mo. 156; Clamorgan v. Greene, 32 Mo. 285; Tyler v. Hall, 106 Mo. 319; Hasenritter v. Kirchhoffer, 79 Mo. 242; West Mo. Land Co. v. Railroad, 161 Mo. 604; Bradley v. Rappell, 133 Mo. 553.

*McReynolds & Halliburton* for respondent.

(1) Where constructive service is authorized instead of personal, there must be a strict compliance with the statutory requirements. Myers v. McRay, 114 Mo. 377; Parker v. Barton, 172 Mo. 85; Charles v. Morrow, 99 Mo. 646. (2) The petition in the divorce case alleges "that defendant is a non-resident of this State; or that he has absconded or absented himself from his usual place of abode in this State, so that the ordinary process of law cannot be served upon him." Which allegations are contradictory and did not authorize the publication issued against defendant. G. S. 1865, chap. 164, sec. 13, p. 655; Parker v. Burton, 172 Mo. 90; Harness v. Cravens, 126 Mo. 246; Tooker v. Leake, 146 Mo. 433; Dickenson v. Cooley, 15 Kan. 269; 2 Cyc. 22. (3) (a) The statutory affidavit to the original petition in the divorce case, being signed and sworn to by J. Lovelace as agent for plaintiff and the statute requiring such affidavit to be made by plaintiff, the court on said petition did not have jurisdiction to order publication or to decree divorce, as there was no authority in the statute for an agent or next friend to make the statutory affidavit. G. S. 1865, p. 460, ch. 114, sec. 2; Bryant v. Harding, 29 Mo. 347; Huthsing v. Mans, 36 Mo. 107; Norvell v. Porter, 62 Mo. 312; Quigley v. Bank, 80 Mo. 296; 2 Bishop, Marriage and Divorce (5 Ed.), sec. 306 A; Bank v. Tallman, 15 Wis.

92; Hadden v. Larned, 83 Ga. 636.   (b)   It is necessary, under a statute like the General Statute 1865, in order that the court may take jurisdiction, that all the requisites mentioned in the affidavit shall be set out and sworn to by plaintiff.   14 Cyc. 678; Brown v. Brown, 138 Ind. 257; Eastes v. Eastes, 79 Ind. 363; Stewart v. Stewart, 28 Ind. App. 378; Moore v. Moore, 130 N. C. 338; Nichols v. Nichols, 128 N. C. 108; Ladd v. Ladd, 121 N. C. 118.   (c)   The affidavit of absence of collusion and good faith is jurisdictional and the absence of the affidavit to that effect is fatal.   Ayres v. Gartner, 90 Mich. 380; Hopkins v. Hopkins, 132 N. C. 22; Rayl v. Rayl (Tenn.), 64 S. W. 309; DeArmond v. DeArmond, 92 Tenn. 40.   (d)   An affidavit must be made, of course, by a person having knowledge of the facts.   2 Cyc. 5; Cheek v. James, 2 Heisk. (Tenn.) 170; Baker v. Knickerbocker, 25 Kan. 288.   (e)   Where a statute specifically points out who may make a certain affidavit, no one else can make it, or where it is prescribed by statute or rule of court that an affidavit shall be made by the party in person, no one else can make it.   2 Cyc. 5; Steinbach v. Leese, 27 Cal. 295; State v. County, 5 Nev. 317; Brown v. Walker, 8 N. Y. Supp. 59; Ex parte Aldrich, 1 Den. (N. Y.) 662; In re Heath, 40 Kan. 333; Ex parte Shumway, 4 Denio 258; Baker v. Knickerbocker, 25 Kan. 288.   (f)   Where it appears that an affiant could have had no personal knowledge as to the material allegations, the affidavit is defective. 5 Cyc. 24; Atchison v. Bartholow, 4 Kan. 124; Lewis v. Connelly, 29 Neb. 222; Gawtry v. Doane, 51 N. Y. 84; Dyer v. Flint, 21 Ill. 80; Neal v. Gordon, 60 Ga. 112; Ferris v. Bank, 158 Ill. 238; Hodgman v. Barker Co., 14 N. Y. 574; Cook v. De LaGarza, 13 Tex. 431; Campbell v. Hall, 1 Kan. 488.   (g)   The affidavit and jurat is part of the petition and if defective and not in compliance with the statute is fatal to the proceedings. Burnes v. Burnes, 61 Mo. App. 618; McQuillin, Plead-

ing & Practice, sec. 295; Baryhydt v. Alexander, 59 Mo. App. 192. (h) The right to petition for divorce is a personal one; no one can file or maintain except the party; neither guardian or next friend can file or maintain action for an infant; she must make the statutory affidavit; guardian or next friend is not competent to do so. Richardson v. Richardson, 50 Vt. 119; 2 Bishop on Marriage & Divorce (6 Ed.), sec. 306 A; Besore v. Besore, 49 Ga. 378; Bradford v. Abend, 89 Ill. 78; Worthy v. Worthy, 36 Ga. 45; Mohler v. Shanks, 93 Iowa 273; Birdsell v. Birdsell, 33 Kan. 433; Winslow v. Winslow, 7 Mass. 96; Jones v. Jones, 18 Me. 308; Amos v. Amos, 4 N. J. Eq. 171; Tippel v. Tippel, 4 How. Prac. 346; Wright v. Wright, 3 Tex. 168; G. S. 1865, p. 460, sec. 1, chap. 114; p. 651, sec. 8, chap. 161.

WOODSON, J.—This is an action in ejectment, and the petition is in the usual form, instituted in the circuit court of Jasper county, whereby the plaintiff sought to recover the undivided one-half interest in and to certain real estate situated in said county, with damages for the detention thereof, and rents and profits.

The answer admitted the possession of certain portions of the land, and denied he had the possession of the remainder; that he had bought plaintiff's interest in the land, paying $300 therefor, and that he had expended money for improvements; that plaintiff had stood by and knew of defendant making improvements without objection and making no claim to the land; that she had not tendered back the purchase money nor paid for the improvements and taxes; and that she was estopped by her conduct from prosecuting her action.

Defendant pleaded the ten, twenty-four and thirty years' Statute of Limitations; and that plaintiff's marriage to Daniel Hinkle in 1867 was void; that her first husband, Daniel Edmonds, was alive at said time and

did not die until some years afterwards; and that she was divorced from Daniel Hinkle in March, 1903.

The plaintiff's reply denied the allegations of the answer and further averred that at all the times mentioned in the answer she was a married woman and continued so until March, 1903.

It was admitted on the trial that Emberson Herold was the common source of title; that he died intestate in June, 1864, owning three hundred and twelve and one-half acres of land, of which the land in controversy is a part, and leaving surviving him as his heirs at law his six children, one of whom is the plaintiff; and that the value of the rents and profits of the land sued for is $2 per acre per year.

The record of a partition suit in the common pleas court of Jasper county was read in evidence, by which it appeared that in an action between part of the heirs of Emberson Herold, deceased, and the defendant and others, the defendant had claimed the one-sixth interest of plaintiff and also another one-sixth interest purchased by him from one of the other heirs, and that the land in controversy was set off to him as his two-sixths interest in the estate. The plaintiff was not a party to that suit.

It was shown by the plaintiff's testimony that plaintiff was born on June 7, 1850; had been twice married, first to Daniel Edmonds in the fall of 1865, and with whom she lived three months and was then divorced from him October 1, 1867; that she married Daniel Hinkle January 1, 1868, and continued as his wife until divorced from him June 22, 1903; that Daniel Edmonds died after plaintiff's marriage with Hinkle; that defendant was plaintiff's stepfather after having married plaintiff's mother, the widow of Emberson Herold.

Defendant's evidence established the following facts, to-wit:

That plaintiff and Daniel Edmonds were married in November, 1865, and separated in March, 1866; that on January 9, 1867, plaintiff filed a petition for divorce from Daniel Edmonds. Said petition was sworn to by J. Lovelace as agent for plaintiff, the affidavit otherwise being in statutory form for divorce proceedings. In the body of the petition is the following allegation: "That defendant is a non-resident of this State or that he has absconded or absented himself from his usual place of abode in this State, so that the ordinary process of law cannot be served upon him." Upon which allegation an order of publication was made, notifying Daniel Edmonds to appear at the March term, 1867. At which term there was an interlocutory decree in favor of plaintiff. At the October term, 1867, on October 1, plaintiff by leave of court amended her petition, the amendment consisting of the statutory affidavit being written on to the original petition and subscribed and sworn to by plaintiff and on the same day final decree was entered in favor of plaintiff. On January 1st, 1868, plaintiff went through a marriage ceremony with Daniel Hinkle and lived with him as his wife until sometime in 1903.. The record shows that Daniel Edmonds died in Joplin, Missouri, some four or five years after said decree of divorce and plaintiff's marriage to Hinkle.

Defendant received two deeds from plaintiff for her interest in this land, one in January, 1868, while still under age, and one in December, 1868, after she became of age, but while living with Daniel Hinkle as his wife, both acknowledged by plaintiff and Daniel Hinkle, but in neither does the certificate show she was examined separate and apart, etc. .

Defendant took and held possession of said land, under said deeds, for thirty-five years, and paid all the taxes thereon, and the legal title and equitable title

thereto emanated from the United States more than thirty-five years before the commencement of this action.

The cause was tried by the court without the intervention of a jury, and, at the request of plaintiff, the court gave five instructions, and refused the following:

"The court declares the law to be that the decree of divorce granted in favor of the plaintiff against Daniel Edmonds on the first day of October, 1867, was valid and effective to divorce the plaintiff from said Daniel Edmonds."

To which action of the court, in refusing said instruction, the plaintiff duly excepted.

The court over the objection of the plaintiff gave declarations of law on behalf of the defendant to the effect that the decree of divorce obtained by the plaintiff from Daniel Edmonds was void for the reason that the statutory oath attached to the petition was sworn to by the next friend instead of the plaintiff, and that the marriage between the plaintiff and Daniel Hinkle was void, and that in consequence the thirty-years' Statute of Limitation was a bar to the recovery by the plaintiff.

Other declarations of law were given and refused, all showing that the theory of the finding for the defendant was that the decree obtained from Daniel Edmonds was void and that the marriage to Daniel Hinkle was likewise void, and that the Statute of Limitations commenced to run against the plaintiff at the instant of the death of Daniel Edmonds.

The court found the issues for defendant, and rendered judgment accordingly. Plaintiff in due time filed motions for a new trial and in arrest, which were, by the court, overruled, and exceptions were duly saved, and plaintiff has brought the cause here by appeal.

OPINION.

I. Plaintiff's contention is, that, when, in 1864, her father, Emberson Herold died, seized of the land described in the petition, she, under the Statute of Descent and Distribution, inherited an undivided one-sixth of it, and, being a minor at the time and married before she attained her majority, the Statute of Limitations would not run against her until the dissolution of her marriage contract, which was on June 22, 1903; and that when the land was partitioned and her portion was decreed and set over to defendant, ejectment will lie against him for her share of the land, notwithstanding the execution and delivery of the two deeds by her to the defendant, purporting to convey the land in controversy, for the reason, as she contends, both of them are void because she was not examined separate and apart from her husband when she acknowledged them, as required by statute.

The defendant, upon the other hand, contends that the decree of divorce rendered in plaintiff's favor against Daniel Edmonds, her first husband, on October 1st, 1867, was absolutely null and void, and that she continued to be his lawful wife until his death, which occurred in 1872 or 1873, and that on that account her marriage to Daniel Hinkle, on January 1, 1868, was absolutely null and void, because she could not have two lawful husbands at the same time.

Under that state of facts, defendant contends that when Daniel Edmonds, her first husband, died, she was of age, and the Statute of Limitations began to run against her, which was at least thirty years before the institution of this suit.

From these contentions of the plaintiff and defendant it is readily seen that the vital and turning point in the case is the validity or invalidity of that decree of divorce. If it is valid, then the plaintiff must recover

the land; but if it is invalid, then the defendant must be adjudged the lawful owner thereof. So this presents squarely the question, is that decree valid or invalid?

In the first place, the defendant assails the sufficiency of the petition, upon which the decree is based, for two reasons; because, first, it alleges, "that defendant is a non-resident of this State; or that he has absconded or absented himself from his usual place of abode in this State so the ordinary process of law cannot be served upon him."

Defendant contends that these allegations are contradictory of each other, because a party cannot be a non-resident of this State and abscond or absent himself from his usual place of abode in this State at the same time; and, for that reason, the allegations were not sufficient and did not authorize the order of publication made in the divorce proceedings instituted against the defendant in that case.

The statute in force at the time that suit was begun respecting service by publication was as follows: "In suits in . . . divorce . . . if the plaintiff, or other person for him, shall allege in his petition . . . . . that part or all of the defendants are non-residents of the State, or have absconded or absented themselves from their usual place of abode in this State etc., the clerk shall make an order of publication," etc. [Sec. 13, chap. 164, Gen. Stat. 1865.]

In discussing a similar question, which arose under this same section, Judge BRACE used this language: "It appears upon the face of the record in the tax suit, that service of notice by publication was ordered on the ground that the court had been 'duly informed by evidence of the plaintiff herein that said Samuel Burton is a non-resident of the State of Missouri.' In order that non-residence may afford a basis for an order of publication, the statute requires the allegation of

that fact in the petition or in an affidavit filed with the same, or some time thereafter. The petition in that suit contained no such allegation, nor was any affidavit containing such an allegation filed therewith or thereafter. On the contrary, the petition was silent on that subject, the said defendant was sued, and the summons issued against him as a resident defendant, and the allegation contained in the only affidavit filed in the case was that the said defendant 'had absconded and absented himself from his usual place of abode in this State.' Thus, it appeared both affirmatively and negatively that said defendant *was a resident* and not a non-resident of the State, and under the statute the court had no authority to order service on him as a *non-resident* by publication." [Parker v. Burton, 172 Mo. l. c. 91.]

And Judge SHERWOOD, in construing said section, said: "So that we have here presented a defendant sued as a non-resident, summons issued against him as a resident, and publication issued against him as a resident who could not be found. In short, the order of publication was a clear departure from the allegations of the petition and affidavit." [Harness v. Cravens, 126 Mo. l. c. 247.]

The two cases last cited show that the word "abode" as used in said section 13 means and is used in the same sense as the word "residence" is used.

Judge BREWER, in discussing a similar statute, said: "The grounds for the attachment alleged in the affidavit were, 'that the defendant is a foreign corporation, or a non-resident of Brown county.' There are two objections to this — one that it is in the disjunctive. [Drake on Attachment, sec. 101.] . . . . There was, therefore, no warrant for the issue of the attachment, and the plaintiff in the suit obtained no lien on the goods by the service of the writ." [Dickenson v. Cowley, 15 Kan. l. c. 273.]

"An affidavit is insufficient which states in the alternative the grounds on which relief is sought." [2 Cyc., p. 22, par. 3c; Collins v. Beebe, 54 Hun 320-1, 7 N. Y. Supp. 442; Leonard v. Boman, 21 N. Y. Civ. Proc. 237-9, 15 N. Y. Supp. 822; Billings v. Noble, 75 Wis. 329, 43 N. W. 1131; Harness v. Cravens, 126 Mo. 246 to 253.]

We are unable to understand how a party can be a "non-resident of this State" and at the same time have "a usual place of abode or residence in this State," and vice versa — he cannot have "a usual place of abode or residence in this State," and at the same time be "a non-resident of the State." The one allegation contradicts, counteracts and nullifies the other as completely as if neither had been written in the petition, and for that reason there was no allegation in the petition or affidavit filed in the case which authorized and upon which to base the order of publication against the defendant in the divorce proceedings. The foregoing conclusions are fully sustained by the authorities cited. [See, also, Tooker v. Leake, 146 Mo. l. c. 431.]

The plaintiff controverts the conclusions above stated, and contends that the alternative allegation of non-residence of defendant, or his abscondence from his usual place of abode in this State, is not a jurisdictional matter, but is simply a defect which can only be taken advantage of by special demurrer or motion to make the pleading more definite and certain. No authority is cited supporting that position, while all the authorities to which our attention has been directed hold to the contrary. We, are, therefore, of the opinion that the defendant in that suit was not properly served.

It may not be out of place to state here that when constructive service is authorized, instead of personal, there must be a strict compliance with the statutory requirements. [Myers v. McRay, 114 Mo. 377.]

II.  It is next contended by defendant that the decree of divorce is a nullity, because the petition upon which it is based does not state facts sufficient to constitute a cause of action, because it was sworn to by one J. Lovelace as agent and not by the plaintiff herself, as required by the statute which was in force at the time of the institution of that suit, which is as follows:

"Sec.  2.  The circuit court shall have jurisdiction in all cases of divorce and alimony or maintenance; and all such cases shall be tried by the court, and the like process and proceedings shall be had in such causes as are had in other civil suits, except the answer of the defendant shall not be under oath.  The petition shall be accompanied by an affidavit, annexed thereto, that the facts stated therein are true according to the best knowledge and belief of the plaintiff, and that the complaint is not made out of levity, or by collusion, fear or restraint between the plaintiff and defendant, for the mere purpose of being separated from each other, but in sincerity and truth, for the causes mentioned in the petition.  The proceedings shall be had in the county where the plaintiff resides; and the process may be directed, in the first instance, into any other county in the State where the defendant resides."  [Sec. 2, chap. 114, p. 460, Gen. Stat. 1865.]

It will be observed that this statute requires that "the petition shall be accompanied by an affidavit annexed thereto, that the facts stated therein are true according to the best knowledge and belief of the plaintiff, and that the complaint is not made out of levity, or by collusion, fear or restraint between the plaintiff and defendant, for the mere purpose of being separated from each other, but in sincerity and truth, for the causes mentioned in the petition."

From a careful consideration of this statute, it is clear the Legislature intended that the plaintiff in di-

vorce suits should, in person, swear to the petition. It
not only in express terms commands that to be done,
but it goes further and prescribes the things to be
stated in the affidavit which rest peculiarly and ex-
clusively within her own knowledge, and in the very
nature of the things to be sworn to by her, no one else
could know whether they are true or false. How could
any one save the plaintiff know that the complaint is
not made out of levity, by collusion, fear or restraint,
or that the suit was not brought for the mere purpose
of being separated from each other, or that she is sin-
cere in the prosecution of the suit? They are matters
that are securely locked up in the mind and conscience
of the moving party, and no one else could know those
things at the inception of the divorce suit before inves-
tigation had. It is not pretended that there is express
authority for an agent to make the affidavit, and it is
not perceived how it can be reasonably implied from
anything in the statute. These views are fully sus-
tained by the following authorities: Bryant v. Hard-
ing, 29 Mo. 347; Huthsing v. Maus, 36 Mo. 107; Nor-
vell v. Porter, 62 Mo. 312; Quigley v. Bank, 80 Mo. 296-
7; In re Heath, 40 Kan. 333; Western Bank v. Tallman,
15 Wis. 92; Hadden v. Larned, 83 Ga. 636.

The right to bring a suit for divorce is strictly per-
sonal and under the exclusive volition and control of
the injured party.

"If a guardian or next friend has the power in-
sisted upon, we desire to learn whence it is derived.
It certainly is not given by express provision of law,
nor can it legitimately be deducted from the personal
custody of the ward, which imposes certain duties on
the guardian which he must perform. Whether after
gross and repeated infidelities the wife will continue to
regard him as her husband and live with him as his
wife is for her decision only. Death only can dissolve
the marriage relation without her consent, and no di-

vorce can or ought to be had in his, or any case, but through the agency and will of the injured party." [Worthy v. Worthy, 36 Ga. 45; 2 Bishop, Marriage & Divorce (5 Ed.), sec. 306a.]

This personal character of the suit shows more clearly why the plaintiff only can make the affidavit to the petition. [Richardson v. Richardson, 50 Vt. 119; Besore v. Besore, 49 Ga. 378; 2 Bishop, Marriage & Divorce (6 Ed.), sec. 306a; Winslow v. Winslow, 7 Mass. 96; Birdzell v. Birdzell, 33 Kan. 433; Jones v. Jones, 18 Me. 308; Amos v. Amos, 4 N. J. Eq. 171; Wright v. Wright, 3 Tex. 168.]

Where the statute specifically points out who may make a certain affidavit, it can be made by no one other than those specified. [2 Cyc., p. 5, par. A and P.; Steinbach v. Leese, 27 Cal. 295; State v. County, 5 Nev. 317; Ex parte Aldrich, 1 Denio 662; In re Heath, 40 Kan. 333; Ex parte Shumway, 4 Denio 258; Baker v. Knickerbocker, 25 Kan. 288.]

According to these authorities, clearly Lovelace could not make the affidavit for the plaintiff, verifying the petition, in the divorce proceedings, and for that reason the petition in law stands as though it had never been sworn to.

The plaintiff cites many authorities sustaining the proposition that the next friend may make an affidavit for the minor when necessary to be filed by plaintiff at the commencement or during the progress of the suit, but none of the cases were suits for divorce. The rules governing cases involving property rights are not applicable to divorce cases. [Ayres v. Gartner, 90 Mich. 380; Hopkins v. Hopkins, 132 N. C. 22; Rayl v. Rayl, 64 S. W. 309; DeArmond v. DeArmond, 92 Tenn. 40.]

III. The affidavit of the absence of collusion, fear or restraint and of good faith is jurisdictional, and the absence of such affidavit to that effect is fatal.

In discussing a similar statute of Michigan, the Supreme Court of that State said: "This is a statutory requirement and is mandatory . . . . Nor can this defect be waived by any act of defendant. The policy of the statute is to prevent collusive proceedings between the parties for divorce. If in the power of defendant to waive the provision, the statute may be easily nullified." [Ayres v. Gartner, 90 Mich. 381.]

In the last case cited the Supreme Court, by mandamus, compelled the court below to dismiss the cause pending before it because it had no jurisdiction to hear and try the cause, in the absence of such an affidavit.

In discussing this same question, the Supreme Court of North Carolina used this language:

"The verification is in the following words: 'Julia A. Hopkins, being duly sworn, says she has heard read the foregoing complaint; that the facts set forth therein are true of her own knowledge, except the facts therein set forth on information and belief, and as to them she believes it to be true.' This verification does not conform to the requirements of the Code, section 1287. In the case of Nichols v. Nichols, 128 N. C. 108, this court has said: 'It is necessary, in order that the court may take jurisdiction of the matter of divorce, that each and all of the requisites mentioned in the affidavit required by the Code, section 1287, shall be set out and sworn to by the plaintiff. The requirements are mandatory.' This is not like the case of a complaint in an ordinary action which may or may not be verified under section 257 and 258 of the Code, as the plaintiff elects. The plaintiff is not required by these sections to verify his pleadings, but, in the case of a complaint in an action of divorce, the law is different, as the very language and purpose of section 1287 of the Code show it was intended that its provisions relating to the verification of the complaint should be mandatory and a failure to comply with the requirements of that section is fatal to

the plaintiff's case as the court is without jurisdiction unless the proper verification of the complaint is made. Verification in the very manner prescribed by the section is essential to confer jurisdiction upon the court to entertain the action or proceeding therein.'' Motion to dismiss was sustained. [Hopkins v. Hopkins, 132 N. C. 1. c. 23-4; Martin v. Martin, 130 N. C. 27; Holloman v. Holloman, 127 N. C. 15; Rayl v. Rayl (Tenn.), 64 S. W. 309.]

The Supreme Court of Tennessee said:

"The defects in the affidavit in question are:

"First. It does not state that the complaint is not made out of 'levity.'

"Second. It does not state that the complaint is not made out of collusion 'with the defendant.'

"Third. It does not state that the complaint is made for the 'causes' mentioned in the bill. . . . .

"The peace and happiness of society largely depend upon maintaining the marriage relation, and the policy of the State is to encourage and maintain that relation. For the protection of society against the manifold evils that would necessarily flow from the wanton and indiscriminate severing of that relation, the Legislature has declared that divorces shall not be granted, except for certain causes, which are distinctly set out in the statute; and has prescribed what allegations shall be made in the bill or petition for divorce, and how the bill or petition shall be verified. All these requirements of the statute are for the benefit of society, and not for the benefit of the parties. They are intended to guard against the bad faith and collusion of the parties. The application must show a clear and meritorious case under the statute before the court can take jurisdiction of the cause. The statutory affidavit is an essential part of the application, and without it there is no jurisdiction.'' The bill was dismissed. [DeAr-

204 Sup.—15

mond v. DeArmond, 92 Tenn. 1. c. 42, 46; 14 Cyc., p. 678, par. J, and notes; Moore v. Moore, 130 N. C. 338; Eastes v. Eastes, 79 Ind. 363.]

The plaintiff cites us to but one case which holds contrary to the doctrine above stated, and that is the case of McCraney v. McCraney, 5 Iowa 254. This case is against the great weight of authority in this country, and it seems to us to be against the letter and spirit of our statute upon the subject in hand, and is contrary to sound public policy, and for these reasons we refuse to follow it.

The decree for divorce in the case of plaintiff against Daniel Edmonds, her first husband, is absolutely void for two reasons; because, first, as we have heretofore pointed out the fact, that there was no proper allegation contained in the petition filed in that cause which authorized the court or clerk to issue the order of publication against the defendant, and for that reason the court acquired no jurisdiction over him; and, second, the court acquired no jurisdiction of the cause, because the petition was fatally defective, for the reason that it was not subscribed and sworn to by the plaintiff.

The subsequent verification of the petition, on the day the final decree was entered in the cause, did not cure the defects, because the defendant was not in court at that time.

For the reasons stated the decree was subject to collateral attack in this cause. [Jewett v. Boardman, 181 Mo. 647; Russell v. Grant, 122 Mo. 180; Black on Judgments, secs. 83, 84, 218, 219, and 220-246; 17 Ency. of Plead. & Prac. p. 52, par. 2.]

This would be true even conceding the defendant had been properly served by publication in the divorce suit because an amendment of the petition in a material matter after publication of notice is void and not binding on the defendant. "A petition cannot, therefore, be amended in a matter of substance, after publication

of notice, so as to make a valid judgment thereon against a defendant who does not appear." [Leavenworth Railroad v. Atchison, 137 Mo. l. c. 230; Janney v. Spedden, 38 Mo. 295.]

The verification required to be made and annexed to the petition in divorce proceedings is a matter of substance, so much so that the court acquires no jurisdiction of the cause without it. See authorities cited under paragraph three of this opinion.

It must, therefore, follow according to the Leavenworth and Speddin cases, just mentioned, that the amendment made on the day of trial was void and of no effect.

IV. It follows from what has been before stated that the plaintiff upon the death of her first husband, which occurred sometime between 1872 and 1873, had a complete cause of action against defendant for the possession of the land, which he admits he is in possession of, and she has not asserted that right, notwithstanding the doors of the courts have been open to her for nearly thirty years. Upon the undisputed facts of this case, it is perfectly clear that plaintiff's cause of action is barred by both the ten and twenty-four years' Statute of Limitations.

Several other questions have been presented and argued by counsel for both plaintiff and defendant which we have carefully considered; and, after concluding they could not change the conclusions here reached, we deem it unimportant to discuss them in this opinion.

For the reasons before stated, the judgment of the circuit court is affirmed. *Valliant, P. J., Graves* and *Lamm, JJ.,* dissent as to paragraph one; all concur as to rest of the opinion.