[Civ. No. 14894.   Second Dist., Div. One.   Feb. 28, 1946.]

JOSEPH COHEN, Respondent, v. KATHRYN B. COHEN, Appellant.

Lasher B. Gallagher for Appellant.

Howlett & Williams for Respondent.

WHITE, J.—Respondent, Joseph Cohen, commenced this litigation by filing in the Superior Court of Los Angeles County a complaint for divorce. Appellant wife, in addition to her answer denying the charges of cruelty set forth by respondent, filed a cross-complaint seeking separate maintenance and a division of the community property. Respondent also filed a second action by which he sought to set aside certain transfers of real and personal property theretofore made by him to appellant. The two cases were consolidated for trial. On April 29, 1943, respondent, by leave of court, filed a "supplemental" complaint for divorce which set forth 58 alleged acts of cruelty on the part of appellant. Appellant failed to answer the supplemental complaint, and on September 21, 1943, her default was duly entered. On September 28, 1943, Attorney John E. Glover, who had previously represented appellant (but who was not her counsel at the time her default was entered), filed a petition for the appointment of himself as a guardian *ad litem* of appellant, alleging that she "is totally incapable of conducting the defense or prosecution of the within action"; and upon presentation of this petition to the court (not the department of the judge who tried the case), an order was made appointing Mr. Glover guardian *ad litem* of appellant and substituting him as defendant in the cause. So far as appears from the record, this petition was filed and the order was made without notice to or appearance by appellant personally.

At the opening of the trial, appellant being now represented by Mr. Glover, it was stipulated that her default be set aside, and Mr. Glover thereupon filed in her behalf an amended

cross-complaint *for divorce* and a "supplement to amended cross-complaint." The allegations of these pleadings were by stipulation deemed denied by respondent.

Following submission of the case, but before entry of judgment, the record discloses that appellant, through her attorney and guardian *ad litem*, Mr. Glover, moved to vacate the order of submission, withdraw her amended cross-complaint (for divorce) and reinstate her original cross-complaint (for separate maintenance). This motion, submitted upon the affidavit of Attorney Glover, was denied. Thereafter, on March 13, 1944, the court made findings of fact and conclusions of law, and adjudged that appellant was entitled to a divorce upon the ground of desertion (the ground stated in her "supplement to amended cross-complaint"). The court further ordered that respondent pay to appellant the sum of $7,732.50 plus $200 per month for 24 months, and pay to appellant's attorney a fee of $2,500. Certain real property of respondent was impressed with a lien to secure the payments required by this interlocutory judgment.

Mrs. Cohen, having obtained new counsel (her fourth or fifth change of attorneys), filed notice of appeal from (1) the interlocutory judgment; (2) an order of April 20, 1944, "which order struck from the files all the affidavits and attached exhibits filed by defendant and cross-complainant in support of her motion for a new trial"; and (3) an order of April 24, 1944, "which denied the motion of the defendant and cross-complainant to be relieved of her default for failure to file her supporting affidavits on motion for a new trial within the time allowed by law."

After the filing of the notice of appeal Mrs. Cohen discharged her counsel and appeared in propria persona. Upon the lodging of the record on appeal in this court, she appeared by her present counsel and filed an application for leave to produce additional evidence, consisting of (1) the judgment, now final, in favor of appellant in the consolidated action whereby respondent sought to set aside certain transfers of property to her, and (2) evidence as to additional assets of respondent not disclosed at the trial. Since the case must be reversed and retried, the additional evidence would serve no useful purpose in this court.

Appellant's contentions on appeal may be divided into two categories: (1) An attack upon the validity of the appointment of the guardian *ad litem*, the granting of a divorce upon the

cross-complaint signed by the guardian, and the refusal of the court to permit the withdrawal of the cross-complaint for divorce and the reinstatement of the cross-complaint for separate maintenance only; and (2) an attack upon the findings and judgment of the court with respect to the property rights of the parties. The second group of contentions need not be considered, as the conclusions reached by this court on the first group require that the judgment be reversed and all issues set at large for retrial.

As heretofore indicated, defendant wife by her pleadings originally sought separate maintenance and a division of the community property. About the time that plaintiff husband filed his supplemental complaint for divorce the wife had discharged her attorneys and was appearing in propria persona; she failed to answer the supplemental complaint and her default was entered. Shortly before the trial she re-engaged her former counsel, who presented to the court his verified petition, alleging "that said Kathryn B. Cohen, since the inception of said proceedings, has had five separate and distinct law firms or attorneys representing her in connection with said proceedings, and she now appears in propria persona. . . . That your petitioner is informed and believes . . . that said Kathryn B. Cohen, from the causes set forth in the affidavit of Dr. David Harold Fink hereto attached and made a part hereof, is unable unassisted to properly manage and take care of her property, and is totally incapable of conducting the defense or prosecution of the within action, which action involves substantial property interests. . . ." The affidavit of Dr. Fink stated that the wife was "suffering from severe situational neurosis, caused in part, according to her statements, by her husband's desertion for another woman. . . . That the said Kathryn B. Cohen, by reason of the aforementioned situational neurosis, coupled with an emotional upset, is unable unassisted to properly manage and take care of her property, and totally incapable of conducting the defense or prosecution of the aforementioned litigation." During the course of the trial Dr. Fink was called to the stand by Mr. Cohen's counsel, and he then testified in part as follows:

"THE COURT: Would you say she was sane or insane?

"A. Well, I would say she was on the border line. She is sane enough so that no court in this country would ever declare her insane, and yet she is not sane enough to take any kind of

professional advice. . . . She requires psychiatric care under sanitarium conditions.''

The trial of the cause occupied from October 7 to October 13, 1943. On December 30, 1943, Mrs. Cohen's guardian *ad litem* moved the court to vacate the order of submission and allow the withdrawal of the cross-complaint for divorce and the reinstatement of the cross-complaint for separate maintenance. This motion was submitted upon an affidavit of the guardian *ad litem* as follows:

''That your affiant has been requested by said Kathryn B. Cohen to take the necessary legal steps to effect a withdrawal of her cross-complaint, wherein she seeks, among other things, a dissolution of the marriage of the above named parties, and a reinstatement of her original cross-complaint for separate maintenance, stating in substance that your affiant is insisting and compelling her to sue for divorce against her will and wishes; that it is her, the said Kathryn B. Cohen's life, and that she loves her husband.''

This motion was denied by the trial court. Thereafter, on January 27, 1944, the trial court rendered its decision granting a divorce to appellant, but formal findings and judgment were not entered until March 17, 1944. On May 18, 1944, appellant's motion, in the law and motion department of the superior court, to discharge her guardian *ad litem* was denied without prejudice. Again, on June 2, 1944, appellant and her guardian *ad litem* presented a motion to discharge Mr. Glover as guardian *ad litem*.

This motion was granted. In support of the motion Dr. Fink made an affidavit to the effect ''that it is the opinion of your affiant, based upon his knowledge and experience, personal contact with said Kathryn B. Cohen; that Mrs. Kathryn .B. Cohen is sane and mentally competent and therefore requires no guardianship in the above entitled matter, or for any other reason, or at all.''

Under the point that ''the trial court erred in appointing a guardian ad litem for the defendant,'' appellant contends that the record contains nothing to show that she ever at any time personally agreed to seek or actually sought or authorized her attorney to obtain a divorce; that the prosecution of a suit for divorce through a guardian *ad litem* is contrary to public policy, the wife being entitled to decide that question for herself; and that the appointment of a guardian *ad litem* without notice to her, followed by the filing of amended pleadings seeking a divorce rather than separation, constituted a

denial of her right of decision in contravention of the due process clauses of the state and federal Constitutions.

■ The weight of authority would seem to be that a suit for divorce must be regarded as one which is so strictly personal that it cannot be maintained at the pleasure of a guardian or committee of an insane spouse. (*Mohrmann* v. *Kob,* 291 N.Y. 181 [51 N.E.2d 921, 149 A.L.R. 1274]; *Hinkle* v. *Lovelace,* 204 Mo. 208 [102 S.W. 1015, 120 Am.St.Rep. 698, 11 L.R.A.N.S. 730].) For both majority and minority expressions see cases in 70 American Law Reports 964 and 149 American Law Reports 1284. Assuming that situations could or should arise in which consent to a divorce might be given by a guardian in behalf of an incompetent, the present case is not one of them, and the facts disclosed herein plainly call for a reversal of the judgment. It was the privilege of appellant as the allegedly aggrieved party to decline to seek a divorce, and regardless of the motives behind her attitude it was not within the province of her counsel, her guardian or the court to force one upon her. As heretofore indicated, her desires in this regard were communicated to the court prior to the rendition of its decision.

It is urged that appellant is estopped by her conduct in permitting the divorce pleadings to be filed and not objecting to being represented by a guardian *ad litem,* and that respondent is an innocent victim of a situation over which he had no control. The record, however, discloses that the circuitous procedure adopted in this case whereby a divorce was sought without the express consent of the wife was agreed to by respondent's counsel (not his counsel upon this appeal). Section 128 of the Civil Code provides that in an action for divorce a cross-complainant must personally verify the cross-complaint. The pleadings here involved were not verified, but it was stipulated that they be admitted "with the same force and effect as if they had been verified."

■ The state has an interest in the marital status, its continuance, and its dissolution. (27 C.J.S. 528, 529; *Elms* v. *Elms,* 4 Cal.2d 681 [52 P.2d 223]; *In re Lazar,* 37 Cal.App. 2d 327, 330 [99 P.2d 342].) The state recognizes the family as the foundation stone of the social order. Because under the American philosophy of government the state itself springs from the family, it can only exist so long as the solemnity of marriage and the stability of the family and home ideal endure. Therefore the contract of marriage cannot be dissolved

upon the whim or caprice, or by the consent or collusion, of the contracting parties. Only for the grave causes recognized and sanctioned by law can the marriage bond be dissolved. In the case of *In re Lazar, supra,* at page 330, it was said:

"The state, while not a party in a divorce action, has an interest in the contract and relationship of marriage, which is not subject to dissolution upon the whim or caprice of one of the contracting parties or even upon their mutual consent. It may be dissolved only for causes sanctioned by law. In *Grannis* v. *Superior Court,* 146 Cal. 245, 252, 253 [79 P. 891, 106 Am.St.Rep. 23], the court said: 'The parties to such an action have not the right to control procedure as in other actions. The court is not bound by admissions in the pleadings nor by the stipulations of the parties, nor is its inquiry as to the facts limited by the pleadings. . . . The rule in actions affecting property, that the parties interested may control the disposition of the interests involved, and that the judgment of the court will be made to conform to such disposition, when ascertained, has no application to divorce cases.' (Greenhood on Public Policy, 490; *Roberts* v. *Roberts,* 83 Cal. App. 345 [256 P. 826]; *Deyoe* v. *Superior Court,* 140 Cal. 476 [74 P. 28, 98 Am.St.Rep. 73]; *Maynard* v. *Hill,* 125 U.S. 190 [8 S.Ct. 723, 31 L.Ed. 654].)"

And in *Rehfuss* v. *Rehfuss,* 169 Cal. 86, 92 [145 P. 1020], the court declared:

"An action for divorce concerns not only the parties immediately interested, but also the state. The attorneys in the case represent the respective parties—the court in a sense represents the state. It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together. . . . 'The state has an interest in the maintenance of the marriage tie, which neither the collusion nor the negligence of the parties can impair.' Where it becomes manifest to the court before it loses jurisdiction of the case, that a judgment decreeing a divorce has been obtained by collusive agreement between the parties, or through fraud practiced upon the court, the court has the inherent power to set aside the judgment."

So in the case at bar, it was error for the court to permit the filing of the amended cross-complaints by the guardian *ad litem.* If appellant was incompetent, she was

incapable of consenting to a divorce; if, as testified by Dr. Fink at the trial, she was "sane enough so that no court in this country would ever declare her insane," her personal oath to the divorce pleadings should have been obtained. At no time during the trial, so far as the record discloses, was the wife asked by her guardian, opposing counsel or the court, whether she desired a divorce or whether she had read her amended pleadings.

The conclusions at which we have arrived on this phase of the case render it unnecessary to give extended consideration to other contentions of appellant, as upon the record here presented the cause should be remanded for a new trial upon all of the issues. ■ It is only necessary to note, in this connection, appellant's contention that the trial court erred in finally determining the property rights of the parties by the interlocutory decree. The case of *Leupe* v. *Leupe,* 21 Cal. 2d 145 [130 P.2d 697], holds: "An immediate disposal of property upon an interlocutory decree of divorce is thus within the *jurisdiction* of the trial court." (Emphasis added.) "It has been held in certain cases that the trial court *should not* assign and dispose of the community or homestead property immediately by an interlocutory decree of divorce, but should wait until such time as the marriage is absolutely dissolved. (Citing cases.) These cases, however, dealt with direct appeals from interlocutory decrees in which error only was claimed and do not involve questions of jurisdiction or the effect of such decrees after the time for appeal has passed. Furthermore, it has been said that the court generally should determine the property issues at the same time it determines the issues with respect to the divorce, although" (following emphasis added) "*the court may specify that its determination should not become effective or* final until the entry of the final decree. (Citing cases.) This practical solution of the problem was recognized and approved in the Remly and Strupelle cases, *supra.* We need not decide in this case whether it was error to make an immediate assignment of property in the interlocutory decree or whether the right to so dispose of the property of the parties was within the discretion of the court." The trial court may, therefore, in its discretion, determine the property rights of the parties in the interlocutory decree, provided such a course does not operate to the undue prejudice of either party.

■ While it may be that pursuant to the interlocutory

judgment of divorce entered herein plaintiff has paid to defendant wife certain sums of money, nevertheless no prejudice will ensue to plaintiff in that regard by reason of a reversal of the judgment which sets at large all of the issues raised by the pleadings, and upon a retrial the court may take into consideration in the rendition of its judgment such benefits, if any, as have enured to defendant wife by reason of the interlocutory judgment of divorce which is the subject of this appeal.

The interlocutory judgment of divorce granted herein and entered March 15, 1944, docketed March 16, 1944, in Book 1412, Page 116, of Judgments, is reversed, and the cause remanded for a new trial in accordance with the views herein expressed. The attempted appeals from the order of April 20, 1944, striking from the files all affidavits, pleadings and exhibits filed by the defendant in support of her motion for a new trial, and from the order of April 24, 1944, denying the motion of defendant to be relieved of her default for failure to file within the time prescribed by law her supporting affidavits on motion for a new trial, are, and each is, dismissed. The application for leave to produce additional evidence is denied.

York, P. J., concurred.

Doran, J., concurred in the judgment.