15 Cal.Rptr.3d 196 (2004)
119 Cal.App.4th 1290
MICHAEL J., Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
Linda Rogers, as Conservator, etc., Real Party in Interest.
No. G033218.
Court of Appeal, Fourth District, Division Three.
June 30, 2004.
Rehearing Granted July 22, 2004.
*197 Price, Crooke & Gary, Donald R. Price, Bruce J. Gary; Bradley R. Kirk & Associates and Bradley R. Kirk, Irvine, for Petitioner.
No appearance for Respondent.
Stephen M. Magro, Tustin, for Real Party in Interest.

OPINION
RYLAARSDAM, ACTING P. J.
Does the conservator of the person and the estate of a mentally disabled person who is unable to communicate her wishes have the power to initiate and prosecute a petition for the dissolution of her marriage? We conclude she does not. But, if necessary for the protection of the assets of the estate, the conservator has the authority, subject to the approval of the probate court, to petition for legal separation. The trial court ruled it had the power to grant conservator's petition for substituted judgment and for instructions directing her to file and prosecute a petition to dissolve the conservatee's marriage. We disagree and therefore grant husband's petition for writ of mandate and order the trial court to vacate its order.

FACTS
Real party in interest Linda Rogers (conservator) is the conservator of the person and estate of Jung J. (conservatee). Conservator filed a petition in the probate court seeking authority to file an action dissolving conservatee's marriage to petitioner Michael J. (husband). According to the petition, conservatee and husband married in 1989. At the time, both of them were adults, fully capable of handling their affairs. Their marriage was described as "happy, loving, and stable."
After giving birth to the couple's child in 1992, conservatee experienced medical complications causing her to suffer severe, disabling, and permanent brain damage. She lost the ability to move, is confined to a bed, and requires constant care. In addition, except for her ability to laugh and cry, conservatee cannot communicate.
The complications triggered a medical malpractice action resulting in a settlement. The conservatorship was established to receive the settlement proceeds paid on conservatee's behalf. Currently, the income from the settlement proceeds and an annuity are sufficient to meet conservatee's monthly expenses.
Initially, the court appointed husband as the conservator of the person and the estate of conservatee, but after conservatee's family members objected to his accountings, the court suspended his powers. The parties then reached a settlement under which husband resigned as conservator and the court appointed conservator in his stead.
After his resignation, husband allegedly ceased visiting conservatee on a regular basis and engaged in an extramarital affair. In 2001, husband filed a marital dissolution action, but subsequently dismissed it. Conservator makes several allegations as to why a dissolution would be appropriate. They include claims that conservatee's religious faith does not proscribe divorce and, according to her relatives, she would sue to dissolve the couple's marriage if competent to do so, based on husband's adultery and alleged abandonment.
*198 Citing Probate Code sections 2359 and 2580 et seq. (all further statutory references are to this code unless otherwise noted), the court found it could authorize conservator "to initiate marital dissolution proceedings under the Family Code when the [c]onservatee is incapable of expressing her desire to have her marriage dissolved," and set the petition for a trial on the merits.
Husband filed this mandamus petition challenging the probate court's order. We issued an alternative writ and stayed the probate court proceedings. We now vacate the probate court's order.

DISCUSSION

California Cases
Although a number of California cases have alluded to the issue before us, none that we or the parties could find resolves whether a conservator has the power to dissolve the marriage of a conservatee who is unable to communicate her desires. In re Marriage of Higgason (1973) 10 Cal.3d 476, 110 Cal.Rptr. 897, 516 P.2d 289, overruled on other grounds by In re Marriage of Dawley (1976) 17 Cal.3d 342, 352, 131 Cal.Rptr. 3, 551 P.2d 323, held that an action for dissolution of a marriage was properly brought on behalf of a conservatee-spouse by her guardian ad litem. But the court limited its decision, holding dissolution proceedings were authorized only if "it is established that the spouse is capable of exercising a judgment, and [has] express[ed] a wish[ ] that the marriage be dissolved on account of irreconcilable differences...." (Id. at p. 483, 131 Cal.Rptr. 3, 551 P.2d 323.) Thus, it is likely the Higgason court intended that, absent a showing the conservatee is capable of exercising such judgment, the conservator may not seek to dissolve the marriage.
Higgason is consistent with Cohen v. Cohen (1946) 73 Cal.App.2d 330, 166 P.2d 622, decided before the adoption of the Family Law Act. There, wife's attorney appeared as her guardian ad litem upon a showing her client was incapable of conducting the divorce proceedings. The trial court denied a subsequent motion to withdraw her cross-complaint for divorce and to reinstate an earlier cross-complaint for separate maintenance. The Court of Appeal reversed. Citing New York and Missouri cases, it concluded that "[t]he weight of authority would seem to be that a suit for divorce must be regarded as one which is so strictly personal that it cannot be maintained at the pleasure of a guardian or committee of an insane spouse." (Id. at p. 335, 166 P.2d 622.) Cohen does not directly address the propriety of the cross-complaint for separate maintenance brought on behalf of the incompetent wife. But it appears that, by reversing an order denying the motions to withdraw the divorce action and reinstate the separate maintenance suit, the court did not disapprove of the latter type of action being brought on behalf of an incompetent spouse.
Conservator seems to derive some comfort from the more recent In re Marriage of Caballero (1994) 27 Cal.App.4th 1139, 33 Cal.Rptr.2d 46, where the wife's attorney-in-fact filed a petition to dissolve her marriage. But that case deals with the right of attorneys-in-fact to act as attorneys at law on behalf of their principals. The court expressly notes that the issue of a representative bringing an action for dissolution on behalf of an incompetent spouse was not before it, because the petition had been amended in the interim to obtain a legal separation and distribution of property. (Id. at p. 1150, fn. 8, 33 Cal.Rptr.2d 46.) If we can draw any conclusion from this, it is that the case implicitly affirms the right of a conservator to bring an *199 action for legal separation and distribution of property. A statement in a footnote that "[i]t has been suggested either a dissolution or legal separation can be obtained by an incompetent spouse under the [Family Law Act]" (ibid.), however, hardly qualifies as a holding that should govern our decision.

Non-California cases
The parties also cite out-of-state cases on both sides of the issue, a substantial number of which are collected in Annotation (1995) 32 A.L.R.5th 673, 1995 WL 900297. Some that permit representatives to prosecute dissolution actions on behalf of their charges are based upon express legislative authorization. (E.g., Houghton v. Keller (2003) 256 Mich.App. 336, 337-338 [662 N.W.2d 854] (Mich. Court Rules 3.201, 3.202(A), 2.201(E)); Vaughan v. Vaughan (Fla.Ct.App.1994) 648 So.2d 193, 195-196 ([Fla. Stat. Sections 61.052, 744.3215(4)(c), 744.3725(6)]); In re Parmer (Mo.Ct.App.1988) 755 S.W.2d 5, 6-7 (RSMO §§ 475.091, 475.110, 475.120.2 & 475.130.4).)
Even those cases that allow representatives to prosecute such dissolution actions without statutory authorization vary in the conditions under which the actions are permitted, and some are very fact specific. For example, Nelson v. Nelson (N.M.Ct.App.1994) 118 N.M. 17 [878 P.2d 335], one of the cases on which conservator relies, places considerable emphasis on the fact that, before becoming incompetent, the spouse had "expressed thoughts indicating a desire to end her marriage." (Id. at p. 339.) Nelson also recognizes: "Most states that have addressed the issue hold that, absent specific authority granted by statute, an incompetent or insane spouse may not bring or continue an action for divorce, nor may such an action be brought or maintained by a guardian on behalf of a ward." (Id. at p. 337.) Another case that conservator cites, Ruvalcaba v. Ruvalcaba (Ariz.Ct.App.1993) 174 Ariz. 436 [850 P.2d 674], notes the significance of "the incompetent's pre-incapacitation comments on the state of his or her marriage...." (Id. at p. 683.) To this extent, these cases incorporate some of the same considerations for the wishes of the incompetent as in Higgason, where the court conditioned the power of conservators on the capacity of their conservatees to express their wishes. (In re Marriage of Higgason, supra, 10 Cal.3d at p. 483, 110 Cal.Rptr. 897, 516 P.2d 289.)

Applicable Probate Code Provisions
Conservator acts with respect to both the person and the property of conservatee. Her powers as to property interests are defined in Division 4, Part 4, Chapter 6 of the Probate Code, commencing with section 2400; the powers as conservator of the person are set out in Division 4, Part 4, Chapter 5, commencing with section 2350. The authority over matters pertaining to conservatee's estate is substantially broader than that over the person of conservatee.
A conservator of the person, unless limited by a court order, "has the care, custody, and control of ... the ... conservatee," including the conservatee's education. (§ 2351.) Other sections confer more specific powers. A conservator generally has the power to fix a conservatee's residence (§ 2352) and to provide for medical care (§§ 2353-2357), but that latter power is limited (§§ 2354-2357). It takes a broad reading of these powers to include an authorization to change the conservatee's marital status. Considering the very personal nature of the marital relationship, we are reluctant, absent an express statute, to read the power to affect a conservatee's *200 marriage into the phrase "care, custody, and control."
But to the extent conservator's petition relates to the property and property rights of conservatee, the powers are broader. Section 2401 grants a conservator of the estate the full management and control of the conservatee's estate, including assets held as community property. (§§ 2401, subd. (a), 2407, 3056.) Thus, if the protection of the conservatee's interest in community property requires a division or other disposition of community property rights, the conservator is under a duty to initiate necessary proceedings to accomplish such a result. Here, conservator based her petition upon sections 2403 (petition for instructions) and 2580 (petition authorizing conservator's proposed action). It is significant that both of these sections concern the powers and duties of a conservator of the estate, not those of the person.
From these distinctions between the powers of conservators of the persons and conservators of the estates, we conclude a conservator of the estate may be authorized to act to the extent necessary to protect a conservatee's property interests in this factual setting. But it is not necessary to sever the marital relationship between conservatee and her husband to accomplish this result.
In an action for legal separation, the court may settle the financial issues between the spouses; this includes a division of community property and community liabilities as well as a determination of support. (Fam.Code, §§ 2010 and 2550; Estate of Lahey (1999) 76 Cal.App.4th 1056, 1059, 91 Cal.Rptr.2d 30; Faught v. Faught (1973) 30 Cal.App.3d 875, 878, 106 Cal.Rptr. 751.) We noted that Cohen v. Cohen, supra, 73 Cal.App.2d 330, 166 P.2d 622 impliedly authorized the representative to bring an action for separate maintenance. And in Pulos v. Pulos (1956) 140 Cal.App.2d 913, 295 P.2d 907, even though the parties agreed that, pursuant to Cohen, a guardian ad litem lacked the power to bring an action for divorce, the court stated, "We can conceive of no reason why an incompetent wife may not, through a guardian ad litem, sue for separate maintenance." (Pulos v. Pulos, supra, 140 Cal.App.2d at p. 915, 295 P.2d 907.)
We are not deciding whether, under the facts which may be presented to the trial court, such a separation is appropriate here. But the conservator has the power, with the court's permission, to initiate and prosecute such an action for the protection of the conservatee's estate. Such permission may only be granted upon an adequate factual showing of the need for such a proceeding. Speculation and hearsay, some of which is included in the present petition, would not suffice.

DISPOSITION
The petition is granted. Let a writ of mandate issue compelling the trial court to vacate that portion of its order of November 5, 2003 wherein it held that "the substituted judgment statutes, Probate Code [section] 2580 et seq., and procedure for requesting court instructions, Probate Code [section] 2359, permit the Court to authorize the Conservator to initiate marital dissolution proceedings under the Family Code when the Conservatee is incapable of expressing her desire to have her marriage dissolved" and ordered a trial on the merits of conservator's petition for substituted judgment and for instructions. The writ is without prejudice to the conservator filing a new petition seeking permission to initiate and prosecute an action for legal separation on behalf of conservatee.
Our order to stay the proceedings is discharged. In the interest of justice, the *201 parties shall bear their own costs incurred in these proceedings.
WE CONCUR: MOORE and IKOLA, JJ.