[No. D055871. Fourth Dist., Div. One. Oct. 22, 2010.]

In re the Marriage of EVELYN D. and CHARLES STRACZYNSKI.
EVELYN D. STRACZYNSKI, an Incompetent Person, etc., Appellant, v.
CHARLES STRACZYNSKI, Respondent;
MARILYN KRIEBEL, as Conservator, etc., Appellant.

532

## COUNSEL

Siegel & Solensky and Lewis M. Wolensky for Appellant Evelyn D. Straczynski.

Law Office of Kim W. Cheatum and Kim W. Cheatum for Appellant Marilyn Kriebel.

No appearance for Respondent.

## Opinion

**IRION, J.**—Evelyn D. Straczynski, through her conservator Marilyn Kriebel, and separately through her guardian ad litem Boris Siegel, appeals from the trial court's sua sponte dismissal of her petition for dissolution of marriage from her husband Charles Straczynski. Among other things, the trial court dismissed the action after determining that due to Evelyn's advanced dementia, financial situation, and current relationship with Charles, dismissal would be in her best interest.[1]

As we will explain, the trial court erred in dismissing the action sua sponte. Accordingly, we reverse the judgment and we remand with instructions that the trial court issue an order to show cause regarding whether—as is required for the prosecution of a dissolution petition by a party who is subject to a conservatorship—Evelyn currently has the necessary capacity to express an intent to obtain a dissolution of her marriage to Charles on account of irreconcilable differences.

I

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2005, Evelyn filed a petition for dissolution of marriage to Charles. The petition alleged that the parties had been married since 1950. In Charles's response, he stated that the parties married in 1986.[2] He also alleged that Evelyn "has Alzheimer's disease and also suffers from dementia" and "is not truly aware of what she is doing at this time."

At some point, which is unclear from the appellate record, the trial court interviewed Evelyn and found her "to have sufficient capacity to determine she wanted a divorce from [Charles]."

In November 2005, the parties stipulated that Evelyn's current health needs would best be served by placing her in an assisted living program.[3] In June

---

[1] In the interest of clarity, we refer to the Straczynskis by their first names, and we intend no disrespect by doing so.

[2] The appellate record contains only certain documents from the superior court file and does not contain information resolving this factual discrepancy. We note that the trial court referred to a "pre-marital agreement executed by Charles and Evelyn on November 3, 1986," which it found to be enforceable.

[3] Charles apparently changed his mind about the stipulation after signing it and asked the trial court not to enter it, but the trial court entered it over Charles's objection.

2006, the trial court entered a stipulated order regarding the parties' assets, which included an agreement to sell the parties' home, close a business and place certain restrictions on the movement of funds. In May 2007, the trial court ruled on a number of motions brought by Charles. The rulings included that (1) the parties' 1986 prenuptial agreement was enforceable; (2) the proceeds of the sale of the family home were to be divided equally; (3) Charles was to pay over to Evelyn an additional $265,000 as her share of community property; and (4) Charles was to pay all expenses associated with Evelyn's care and medications as spousal support, at a minimum amount of $500 per day.

In January 2008, the court made further orders, including that (1) Charles pay $18,000 per month for Evelyn's care, and (2) that Charles pay arrearages in the amount of $57,813.05.

Proceeding concurrently with the dissolution action was a conservatorship case in the probate court regarding Evelyn.[4] At some point no later than June 2006, the probate court appointed a conservator for Evelyn.[5] In June 2007, the probate court found that Evelyn was no longer competent to be in an attorney-client relationship and appointed a guardian ad litem for her. Kriebel was appointed as a successor conservator of Evelyn's estate in April 2008, and the probate court specified that Kriebel "shall have standing to litigate the Family Court matters on behalf of the conservatee."[6]

In December 2008, Kriebel, on Evelyn's behalf, filed an application in the dissolution proceeding requesting that the dissolution proceeding—which had been pending since 2005—be given "priority for a trial date" and that the parties be ordered "to comply with all statutes and local rules regarding the exchange of Final Declarations of Disclosure and all other exchanges required in advance of trial." Charles opposed the application, stating: "[Charles] has been supporting all of [Evelyn's] needs for many months.

---

[4] The appellate record provides only sparse information about the proceedings in the probate court. Our main source of information regarding the probate proceeding is from our discussion in an opinion we issued in an appeal that Charles filed in a probate proceeding in which he unsuccessfully challenged the appointment of a specific guardian ad litem for Evelyn on the basis of a purported conflict of interest. (*Conservatorship of Straczynski* (Mar. 11, 2009, D052288) [nonpub. opn.].)

[5] Charles had requested to be appointed conservator, but the court appointed a third party, later replaced by a professional fiduciary.

[6] The probate court also appointed a conservator of Evelyn's person, who is apparently not authorized to litigate the family court action.

[Evelyn] has been moved to a new residential care facility and is doing much better. She is regaining a significant amount of competency. She now states she does not want to be divorced from [Charles]. [¶] . . . [¶] [Evelyn's] attorney has had this case for many months and has only recently filed any documents and now wishes to rush the matter for no apparent reason."

On February 20, 2009, Charles—who had been represented by counsel in the dissolution proceeding—filed a substitution of counsel form, indicating that he would represent himself. Next, on March 2, 2009, Charles filed a motion to dismiss the dissolution proceeding on the ground that he and Evelyn had reconciled. Several declarations submitted by Charles in support of his motion are relevant here.

First, Charles's own declaration stated that he had been prevented by Evelyn's conservators and attorneys from having contact with Evelyn, but that in December 2008, he was able to visit with her at her care facility for the first time since 2005. According to Charles (who now lives in Las Vegas), he spent four days with Evelyn, who immediately recognized him as her husband and showed affection toward him, e.g., insisting on continually holding his hand, stroking his face and saying she loved him. As described in Charles's declaration, he was told by Evelyn's caregivers after he returned home that Evelyn continually asked for him. Charles described that he returned to spend another four days with Evelyn on January 15, 2009, and when Evelyn saw him, her eyes lit up, she grabbed and held his hand, started to cry and said that she loved him. Charles stated that although he was "in no way attempting to proclaim to the Court that Evelyn is competent by any means," he observed that "Evelyn knows she is married and that I am her husband"; that Evelyn still loves him; and that Evelyn is happy during their visits together. He stated that "whether or not Evelyn understands the concept of divorce or not, she does understand the concept of me being her husband" and "understands the concept of love and the concept of being alone."

The second declaration was from a longtime friend of Charles and Evelyn who visited Evelyn in her care facility in January 2009 while Charles was also there. According to the friend's observations, Evelyn "knew [Charles] to be her husband and she displayed nothing short of love and affection for [Charles]," and Evelyn was "very much in love with the man she knows to be her husband."

The third declaration was from the owner and administrator of the home care facility where Evelyn resides. Among other things, she described (1) the improvement in Evelyn's condition and competency since she was moved to

the care facility in October 2008; (2) the affection between Charles and Evelyn that she witnessed during Charles's visits; and (3) Evelyn's apparent awareness of Charles as her husband and her desire to be his wife.

Kriebel, on behalf of Evelyn, filed a response to Charles's motion, which took the position that "there is no legal foundation and no evidentiary basis to support [Charles's] request to dismiss this action, which of necessity would mean an end of the orders requiring [Charles] to support [Evelyn]."

Siegel, as Evelyn's guardian ad litem, filed a report in connection with Charles's motion. Siegel took no position on whether the dissolution proceeding should be dismissed, but stated that if the court was inclined to dismiss, it should do so only after imposing certain conditions, including (1) issuing an arrearages order and a permanent support order requiring Charles to make support payments to the conservator of Evelyn's estate; (2) requiring Charles to file a full disclosure of his assets; (3) ordering Charles to return his financial accounts and personal property assets to California (presumably from Nev.); and (4) barring Charles, his nominee, or a specific daughter from seeking appointment as conservator of Evelyn's estate or person. According to Siegel, these measures "are necessary due to the orders for the payment of fees and costs that have been entered in the conservatorship matter," which purportedly amounted to $252,835.65.

On April 24, 2009, the trial court held a hearing on Charles's motion to dismiss. Appearing at the hearing were Charles, representing himself; Kriebel's attorney; Siegel, as Evelyn's guardian ad litem; the conservator of Evelyn's person, along with counsel; and Charles's former counsel in the dissolution proceeding, who was still his attorney in the probate matter.

The trial court began the hearing with the question: "How is this dissolution action going to advance the ball for Evelyn Straczynski?" After a lengthy discussion of that issue with the various parties and representatives at the hearing, the trial court stated its view that the dissolution was not in Evelyn's best interest for several reasons. First, it stated that after "looking at the monetary advantages to divorce, separation, [or] staying together," it had concluded "that [Evelyn] would be better off financially if she were not divorced because of the prenuptial agreement for sure, and because of the difficulty in the cost of trying to figure out what was what in the prenuptial agreement." Second, the trial court stated that the financial concerns were "almost an aside, because it is clear to me that whatever goes on in this courtroom or any courtroom is irrelevant to [Evelyn's] life all together." The trial court stated, "from my observation, the most important things in her life are her personal conservator and [Charles]," and observed, "she's a very old

lady with advanced dementia, and that's what makes her happy."[7] Third, the trial court pointed out that "there are parallel procedures in probate [court] to make sure that she's taken care of. . . . [S]he still needs a conservator. And people can look out for her, irrespective of the laws of the Family Code."

Addressing Charles's motion to dismiss on the ground of reconciliation, the trial court stated, "Now, [Charles] has tried to shoehorn this into a recognized format for dismissal, based on reconciliation. I don't know that I could find that they reconciled, but they certainly like each other, but they're not living as husband and wife."

The trial court then discussed why it believed dismissal was warranted. "The dissolution itself, I think, is moot. I don't think there's going to be any evidence presented that I can find, by a preponderance of the evidence, that irreconcilable differences have irremediably . . . broken the marriage asunder. So without that, I can't give a divorce. And I think there's case law that says I can't give a divorce if there's a conservator, anyway. Been a while since I looked at it, but I recall seeing that. And I can only give a legal separation if both parties agree. And [Charles] is not going to agree."[8] Concluding that "all of it's an idle act," the trial court dismissed the dissolution action and vacated the pendente lite support orders.[9]

Kriebel, on behalf of Evelyn, filed a motion to vacate the judgment of dismissal, and then filed a notice of appeal while the motion to vacate was pending. Siegel, as Evelyn's guardian ad litem, also filed a notice of appeal. The trial court issued an order taking the motion to vacate off calendar on the ground that the notices of appeal deprived it of jurisdiction. Kriebel amended her notice of appeal to also encompass the court's purported "denial" of the motion to vacate the judgment of dismissal.[10]

---

[7] During the hearing, the trial court referenced an apparent visit that it made to Evelyn in the care facility. As the court stated, "We have the transcript of our visit out there to see her in her surroundings, and she always wanted to know where he was." The appellate record does not contain the transcript referred to by the trial court or any other information about the visit.

[8] As stated in Family Code section 2345, "[t]he court may not render a judgment of the legal separation of the parties without the consent of both parties unless one party has not made a general appearance and the petition is one for legal separation."

[9] The court stated, "Insofar as there is a need to, for whatever reason, bring a motion for arrears, I'll entertain it. But it's got to be something more than just putting something in her bank account."

[10] The appeal was briefed by Kriebel, on Evelyn's behalf, as the conservator of her estate. Siegel, as Evelyn's guardian litem, filed a joinder in Kriebel's opening appellate brief. For the sake of simplicity, we will refer to the appellant as Kriebel during our legal discussion.

## II

## DISCUSSION

The sole issue in this appeal is whether the trial court erred in issuing a sua sponte dismissal of the dissolution proceeding after determining that Charles's motion for dismissal on the basis of reconciliation was without merit.

As we will explain, we agree with Kriebel that the trial court did not follow the proper procedure and did not rely on valid legal grounds in determining sua sponte that the dissolution proceeding should be dismissed.

### A. The Trial Court Erred in Dismissing the Action Without Prior Notice

As Kriebel argues, and we agree, the trial court's first error was to sua sponte dismiss the action without providing proper notice to the parties.

As a starting point for our analysis, we note that the trial court dismissed the action on its *own* motion, not pursuant to a motion by a party. Indeed, on the day that the trial court dismissed the action, the parties were before the trial court for a hearing on a motion by Charles to dismiss the action on the ground that he and Evelyn had reconciled. The trial court denied that motion, stating that it could not make a finding that Evelyn and Charles had reconciled. After denying Charles's motion, the trial court sua sponte dismissed the action on the grounds that it first identified at the hearing, without giving the parties notice that it would be considering a dismissal on those grounds. Specifically, without providing any notice to the parties, the trial court concluded that the action should be dismissed because (1) it was not in Evelyn's best interest to divorce Charles; (2) the trial court didn't "think there's going to be any evidence presented" allowing it to find irreconcilable differences; and (3) the trial court believed it remembered case law stating that a court "can't give a divorce if there's a conservator."

■ The constitutional guarantee of due process requires that a court give notice to a party and an opportunity to respond before sua sponte dismissing an action. (See *Bricker v. Superior Court* (2005) 133 Cal.App.4th 634, 639 [35 Cal.Rptr.3d 7] [superior court judge violated a party's due process rights during a readiness conference by sua sponte dismissing an appeal from a small claims court judgment, without issuing an order to show cause]; *Moore v. California Minerals etc. Corp.* (1953) 115 Cal.App.2d 834, 837 [252 P.2d 1005] [the court violated the parties' due process rights by sua sponte granting judgment on the pleadings during a trial].) Here, the trial court did not provide notice and an opportunity to respond before it dismissed

the dissolution proceedings on its own motion, and it therefore violated the parties' due process rights. The proper procedure for the trial court to use in ordering a sua sponte dismissal of the dissolution action would have been the issuance of an order to show cause and the setting of a hearing to consider a dismissal on the specified grounds. The trial court did not do so and thereby committed reversible error.

B.  *The Trial Court Had No Legal Basis for Dismissing the Dissolution Action*

The trial court's next error was to dismiss the dissolution action without a proper legal basis. The trial court gave three grounds for the dismissal, but as we will explain, none of them were proper grounds.

First, the trial court discussed its view that a divorce would not be in Evelyn's best interest for financial and personal reasons. However, the trial court cited no legal authority that would permit a court to dismiss a dissolution action on the ground that a divorce would not be in the petitioning party's best interest, and we are aware of none.

■ Second, the trial court observed that it did not "think there's going to be any evidence presented" allowing it to find irreconcilable differences. The predicate to the trial court's statement was that a judgment of dissolution on the grounds of irreconcilable differences *does* require the court to find the existence of irreconcilable differences. (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 117 [104 Cal.Rptr. 472] [" '[T]he court, not the parties, must decide whether the evidence adduced supports findings that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved.' "].) However, such a finding is properly made as part of an adjudication terminating marital status. The trial court admittedly was *predicting* what the evidence was "going to be" at a future trial. Therefore, the trial court impermissibly *prejudged*, without having the evidence before it, whether it would be able to find irreconcilable differences, and it improperly dismissed the action on that basis. (Cf. *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291 [77 Cal.Rptr.3d 305] [" ' "A trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented to him." ' "].) It may be the case that if the dissolution action proceeded to trial, the court would be unable to find irreconcilable differences, but a sua sponte dismissal motion was not the proper context for the trial court to make such a determination.

■ Third, the trial court stated: "I think there's case law that says I can't give a divorce if there's a conservator" but admitted it had "[b]een a while since I looked at it." Our Supreme Court's decision in *In re Marriage of*

*Higgason* (1973) 10 Cal.3d 476 [110 Cal.Rptr. 897, 516 P.2d 289] (*Higgason*) is the applicable authority. *Higgason* established that a spouse under a conservatorship may bring a dissolution action through a guardian ad litem "provided it is established that the spouse is capable of exercising a judgment, and expressing a wish, that the marriage be dissolved on account of irreconcilable differences and has done so." (*Id.* at p. 483.)

■ Although *Higgason, supra,* 10 Cal.3d 476, addressed whether a conservatee may *bring* a petition for dissolution, it did not expressly address the circumstances under which a conservatee may *maintain* a dissolution action when the conservatee's mental condition changes during the proceedings. However, we conclude that there is good reason to interpret *Higgason* as creating a proscription on a conservatee *maintaining* (as well as bringing) a petition for dissolution unless the conservatee continues to possess the necessary capacity to "exercis[e] a judgment, and express[] a wish, that the marriage be dissolved on account of irreconcilable differences." (*Higgason,* at p. 483.) Indeed, the primary authority that *Higgason* relied on was *Cohen v. Cohen* (1946) 73 Cal.App.2d 330 [166 P.2d 622] (*Cohen*), decided before the adoption of the Family Law Act. *Cohen* stated that a complaint for divorce could not be *maintained* by a guardian ad litem on behalf of an incompetent spouse, as "[t]he weight of authority would seem to be that a suit for divorce must be regarded as one which is so strictly personal that it cannot be *maintained* at the pleasure of a guardian or committee of an insane spouse." (*Cohen,* at p. 335, italics added.) Because the act of filing a divorce petition and maintaining a divorce action through to final judgment both have the same intensely personal quality described in *Cohen,* we conclude that a conservatee may not *maintain* a dissolution action unless "capable of exercising a judgment, and expressing a wish, that the marriage be dissolved on account of irreconcilable differences."[11] (*Higgason, supra,* 10 Cal.3d at

---

[11] We note that Witkin suggests a contrary rule. Citing *Cohen, supra,* 73 Cal.App.2d 330, 335, Witkin states that "[o]lder cases have held that a guardian or guardian ad litem could not maintain an action for divorce on behalf of his or her incompetent ward" on the ground that "[t]he suit was strictly personal." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 71, p. 132.) Witkin further observes that prior to the Family Law Act (Civ. Code, former § 4000 et seq.; Stats. 1969, ch. 1608, § 8, p. 3314), case law held that a guardian ad litem could maintain an action for separate maintenance as it existed under the prior law. (4 Witkin, *supra,* Pleading, § 71, p. 132, citing *Pulos v. Pulos* (1956) 140 Cal.App.2d 913, 915 [295 P.2d 907].) Turning to the state of the law after the Family Law Act, Witkin suggests that "[t]he Family Law Act, by eliminating the fault grounds and the adversary nature of the proceedings . . . , permits a reexamination of both rules; i.e., the objects and effects of dissolution and legal separation are now so similar that it is difficult to see why an incompetent spouse could not seek either method of terminating the marriage." (4 Witkin, *supra,* Pleading, § 71, p. 132.) Witkin's analysis is flawed because it does not acknowledge *Higgason, supra,* 10 Cal.3d 476, which was decided under the Family Law Act and is controlling law from our Supreme Court under the Family Law Act regarding the circumstances in which a conservatee may pursue a dissolution proceeding.

p. 483.) As a procedural matter, the issue of a conservatee's continued competency may either be raised sua sponte by the trial court or through a motion brought by one of the parties.

■ Under the standard set forth in *Higgason, supra,* 10 Cal.3d 476, the trial court was not authorized to dismiss the dissolution action premised solely on the fact that Evelyn was the subject of a conservatorship. Instead, the proper procedure would have been for the trial court to make a finding as to whether, at present, Evelyn was "capable of exercising a judgment, and expressing a wish, that the marriage be dissolved on account of irreconcilable differences and has done so." (*Id.* at p. 483.) Because the trial court did not have *Higgason* in mind when making its ruling, it did not make a finding as to Evelyn's current competency, and we are unable to determine whether the trial court could properly have dismissed the action on the ground that Evelyn currently lacks the capacity required by *Higgason.*

We therefore reverse the trial court's judgment of dismissal, as it was made without proper notice to the parties and without a proper legal or evidentiary basis.

## C. *Instructions for Further Proceedings on Remand*

Several years have passed since the trial court's initial determination of Evelyn's competency, and circumstances suggest that Evelyn's mental condition has changed. Therefore, a renewed factual inquiry into Evelyn's competence is warranted in the dissolution action to ensure that the proceedings remain consistent with the standards set forth in *Higgason, supra,* 10 Cal.3d 476.

We thus direct the trial court to issue an order to show cause on the issue of whether—as required by *Higgason, supra,* 10 Cal.3d 476—Evelyn is currently capable, despite her status as a conservatee, of exercising a judgment and expressing a wish that the marriage be dissolved on account of irreconcilable differences. If the trial court finds Evelyn lacks the necessary capacity, it shall dismiss the action. If, on the other hand, the trial court finds Evelyn to have the necessary capacity, it shall proceed with the dissolution action, affording the parties "[t]he same judicial resources and safeguards . . . as are committed to other civil proceedings." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1368 [63 Cal.Rptr.3d 483, 163 P.3d 160].)[12]

---

[12] The trial court correctly noted that in the event of a trial, the existence of irreconcilable differences will likely be a central issue.

## DISPOSITION

The judgment is reversed and this matter is remanded for proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

Haller, Acting P. J., and O'Rourke, J., concurred.

A petition for a rehearing was denied November 10, 2010.