Filed 8/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MORRIS B. SILVER M.D., INC., | B267941 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC559420) |
| v. | |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION - PACIFIC MARITIME ASSOCIATION WELFARE PLAN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Reversed.

Law Offices of Jonathan A. Stieglitz and Jonathan A. Stieglitz for Plaintiff and Appellant.

Seyfarth Shaw, D. Ward Kallstrom, Kevin J. Lesinski, Jonathan A. Braunstein and Eden Anderson; Leonard Carder, Christine S. Hwang and Andrew J. Ziaja for Defendant and Respondent.

_____

Morris B. Silver M.D., Inc. (Silver) sued the International Longshore and Warehouse Union-Pacific Maritime Association Welfare Plan (Plan) to recover payment for health care services provided to Plan policyholders. Silver's action was dismissed on the ground all of his state law causes of action were preempted by the federal Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) (ERISA). We reverse the order dismissing the lawsuit and remand for further proceedings as set forth in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2014 Silver filed a complaint and on April 24, 2015 a first amended complaint against the Plan for breach of oral contract, quantum meruit, promissory estoppel and interference with contractual relations. The amended complaint alleged Silver had provided health care services to Plan policyholders for several years.[1] Before rendering services, Silver, an out-of-network provider, called the Plan to determine the amount it would pay.[2] The information supplied was memorialized in writing by Silver personnel on "an insurance verification sheet."[3] Silver also obtained written agreements from the policyholders ensuring they would pay their portion of the health care services.[4]

---

[1] The Plan is an ERISA-regulated employee welfare benefit plan established by collective bargaining between the International Longshore and Warehouse Union and the Pacific Maritime Association.

[2] Generally, the Plan agreed to pay 80 percent of the usual and customary rate for the service after the patient had met his or her deductible and until the patient's "max out of pocket" was met. Once that maximum had been reached, the Plan promised to pay 100 percent of the usual and customary rate for services, an amount that would not be tied to the Medicare schedule for payment.

Although the amended complaint alleged Silver personnel talked with third-party administrators for the Plan, for ease of reference we generally refer only to the Plan.

[3] Silver personnel also requested Plan documents for patients, but were told the documents "would not and could not be provided to them."

[4] The agreements stated, "I fully understand that my financial obligation to the medical provider above is not contingent on any claim, benefits or insurance proceeds

2

Until September 2012 the Plan regularly paid Silver's invoices. Beginning that month, however, the Plan stopped paying Silver, sending it and its policyholders explanation-of-benefits (EOB) forms indicating that the billed procedures were not covered and that neither the Plan nor the patient had any obligation to make payment to Silver.[5]

In June 2015 the Plan demurred to the amended complaint on the grounds Silver's claims were preempted by ERISA and the amended complaint failed to state a cause of action. The trial court, on its own motion, dismissed the amended complaint without prejudice on preemption grounds and ruled the demurrer was moot. In finding the claims preempted, the court explained, "'courts look to whether the state law cause of action would remain "but for" the denial of the claim for benefits . . . .'" Because Silver's claims would not remain if the outstanding balance due Silver had been paid, the court found the claims were essentially denial-of-coverage claims and thus preempted.

## DISCUSSION

1. *Notwithstanding the Procedural Irregularities, Silver's Due Process Rights Were Not Violated*

Rather than rule on the Plan's demurrer, which raised preemption, the trial court, without explanation or citation to authority, dismissed the action without prejudice on its own motion, finding Silver's state law causes of action preempted by ERISA. The court then found the Plan's demurrer was moot. Silver contends this procedural anomaly violated its due process rights because it had no notice of the court's sua sponte motion and no opportunity to address the arguments upon which the court relied. Silver also argues Code of Civil Procedure section 581, governing dismissals, does not provide any authority for the court's action. (See *In re Marriage of Straczynski* (2010)

which may be paid by any insurance, if there is not a recovery; I fully accept responsibility for the debt that I have incurred."

[5] In support of its demurrer, the Plan submitted an exemplar EOB. In addition to sections setting forth "Patient Responsibility" and "Paid by Insurance/Coverage," there is a box denominated "Total Patient Responsibility."

189 Cal.App.4th 531, 538-539 [trial court erred in dismissing action without providing proper notice to parties and without proper legal basis].)

We agree the trial court's approach was irregular. Nevertheless, Silver's right to due process was not violated, and any error by the trial court was harmless. The legal basis for the trial court's dismissal—ERISA preemption—was addressed by the parties in their briefing in support of and opposition to the Plan's demurrer. Indeed, the court's decision set forth the law governing demurrers, and its preemption analysis cited several of the cases discussed by the parties. Even though the court considered additional authority not raised by the parties, is not unusual or improper for a court to engage in its own research and decide an issue in reliance on authority the parties have not cited. For practical purposes, the court's order was equivalent to a ruling sustaining the Plan's demurrer.[6]

2. *Silver's Claims for Breach of Contract, Quantum Meruit and Promissory Estoppel Are Not Preempted by ERISA; Its Claim for Interference with Contractual Relations Is Preempted*

a. *Standard of review*

"The interpretation of ERISA, including whether ERISA preempts state law, is a question of law which we review de novo." (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 839.)

b. *ERISA preemption generally*

"ERISA is a comprehensive federal law designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans. [Citation.] As a part of this integrated regulatory system, Congress enacted various safeguards to preclude abuse and to secure the rights and expectations that ERISA brought into being.

---

[6]     We consider the court's order involuntarily dismissing Silver's action to be comparable to an order dismissing a lawsuit after the court has sustained a demurrer with leave to amend and the plaintiff has chosen not to amend. As such, it is appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (See *County of Santa Clara v. Atlantic Richfield Co*. (2006) 137 Cal.App.4th 292, 312; see also *Topa Ins. Co v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336.)

4

[Citations.] Prominent among these safeguards is an expansive preemption provision, found at section 514 of ERISA [29 U.S.C. § 1144]." (*Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050-1051 (*Marshall*); see *Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 208 [124 S.Ct. 2488, 159 L.Ed.2d 312] ["The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, [citation] which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"].)

ERISA has two distinct preemption provisions: Preemption under section 514 (29 U.S.C. § 1144), known as conflict or ordinary preemption; and so-called complete preemption under section 502(a) (29 U.S.C. § 1132(a)). Conflict preemption is an affirmative defense to a plaintiff's state law cause of action that entirely bars the claim; that is, the particular claim involved cannot be pursued in either state or federal court. Complete preemption, in contrast, is a doctrine that recognizes federal jurisdiction over what would otherwise be a state law claim, an issue that typically arises when the defendant has removed the plaintiff's state court lawsuit to federal court. "Despite the similarity in nomenclature, complete preemption is quite distinct from ordinary preemption. . . . '"'Ordinary preemption' is an affirmative defense to the allegations in a plaintiff's complaint asserting a state law claim claiming that a state law conflicts with, and is overridden by, a federal law. On the other hand, complete preemption does not constitute a defense at all. Rather, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is actually and entirely a matter of federal law, even if the state law would provide a cause of action in the absence of the federal law.'" (*Totten v. Hill* (2007) 154 Cal.App.4th 40, 50; see *Marin Gen. Hosp. v. Modesto & Empire Traction Co*. (9th Cir. 2009) 581 F.3d 941, 945 [complete preemption "is 'really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim'"].) Despite this difference, case authority discussing ERISA preemption often conflates the two doctrines. (See

5

*Marin Gen. Hosp.*, at p. 945 [acknowledging the Ninth Circuit may have contributed to the confusion between the two doctrines by using terminology only relevant to conflict preemption to describe complete preemption].)  Both parties agree the issue in the instant case concerns conflict preemption, not complete preemption.

### c. *Conflict preemption*

#### i. *State laws*

Section 514(a) provides, "Except as provided in subsection (b) of this section, the provisions of [Titles I and IV of ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ."  (29 U.S.C. § 1144(a), italics added.)  Initially, the Supreme Court interpreted the "relate to" language very broadly, holding, "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  (*Shaw v. Delta Air Lines* (1983) 463 U.S. 85, 96-97 [103 S.Ct. 2890, 77 L.Ed.2d 490]; see *Ingersoll-Rand Co. v. McClendon* (1990) 498 U.S. 133, 139 [111 S.Ct. 478, 112 L.Ed.2d 474] (*Ingersoll-Rand*) ["[u]nder this broad common-sense meaning, a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect"].)

Subsequently recognizing the difficulty of reconciling such a broad and potentially limitless definition with the competing presumption that Congress generally does not intend to supplant state law, the Supreme Court concluded it "simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the law Congress understood would survive."  (*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 656 [115 S.Ct. 1671, 131 L.Ed.2d 695] (*Travelers*) [holding New York statute requiring hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan or certain health maintenance organizations was not preempted]; see *Gobeille v. Liberty Mut. Ins. Co.* (2016) ___ U.S. ___ [136 S.Ct. 936, 943, 194 L.Ed.2d 20] (*Gobeille*) ["In *Travelers,* the Court observed that '[i]f "relate to" were

6

taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course.' [Citation.] That is a result 'no sensible person could have intended.'"].) Congress's intent in enacting section 514(a), the *Travelers* Court explained, was "'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" (*Travelers*, at pp. 656-657, quoting *Ingersoll-Rand*, *supra*, 498 U.S. at p. 142; see *Travelers,* at p. 657 ["basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"].)

In *Gobeille* the Supreme Court recently summarized its ERISA preemption case law by describing two categories of state laws that ERISA preempts: First, a state law that "'acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation.'" (*Gobeille*, *supra*, 136 S.Ct. at p. 943.) Second, "a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.' [Citation.] A state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" (*Ibid.*)

ii. *State law claims*

With respect to preemption of state law claims, the Supreme Court has held common law causes of action "based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)." (*Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 48 [107 S.Ct. 1549, 95 L.Ed.2d 39] (*Pilot Life*) [action by an employee against his employer's disability insurance provider]; see *Marshall*, *supra*, 2 Cal.4th at p. 1049) [action seeking state law

7

remedies for improper denial of benefits preempted]; *Hollingshead v. Matsen* (1995) 34 Cal.App.4th 525, 542 [state law claims by plan participants and administrator of estate of plan participant against insurance agency and agent, including negligent and intentional infliction of emotional distress, were "fundamentally a claim for recovery of unreimbursed medical expenses" and thus preempted by ERISA].)

The Supreme Court has also held a claim that an employer wrongfully terminated an employee primarily to avoid contributing to, or paying benefits under, the employee's pension fund clearly "'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted" because the "cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan." (*Ingersoll-Rand*, *supra*, 498 U.S. at p. 140.) The Court explained the purpose of section 514(a) supported its conclusion: "Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a). Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." (*Ingersoll-Rand*, at p. 142.)

Even before the Court recognized in *Travelers* its interpretation of the "relate to" language was too broad to provide meaningful limits, it had recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." (*Shaw v. Delta Air Lines*, *supra*, 463 U.S. at p. 100, fn. 21; accord, *Simon Levi Co. v. Dun & Bradstreet Pension Servs.* (1997) 55 Cal.App.4th 496, 502.) Additionally, "relatively commonplace" "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not preempted even though they "obviously affect[] and involve[] ERISA plans and their trustees." (*Mackey v. Lanier Collection Agency & Serv.* (1988) 486 U.S. 825, 833 [108 S.Ct. 2182, 100 L.Ed.2d 836].)

8

d. *Law governing preemption of claims by third-party medical providers*

Unlike the case at bar, the decisions discussed, as well as the authority relied on by the Plan, involved claims by a participant, an assignee of the participant (for example, a medical provider that has stepped into the shoes of the participant) or a beneficiary,[7] not a third-party medical provider. Several federal Courts of Appeals, however, have addressed claims asserted by third parties in circumstances analogous to those in the instant case and held they are not preempted. (See *Memorial Hosp. System v. Northbrook Life Ins. Co.* (5th Cir. 1990) 904 F.2d 236, 243-246 (*Memorial Hospital*) [leading case holding hospital's claim for deceptive and unfair practices arising from representations regarding coverage not preempted and articulating two-factor test]; see also *Access Mediquip LLC v. United Healthcare Ins. Co.* (5th Cir. 2011) 662 F.3d 376, 385 ["The state law underlying Access's misrepresentation claims does not purport to regulate what benefits United provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services. To prevail on these claims, Access need not show that United breached the duties and standard of conduct for an ERISA plan administrator, because Access's alleged right to reimbursement does not depend on the terms of the ERISA plans."];[8] *The Meadows v. Employers Health Ins.* (9th Cir. 1995) 47 F.3d 1006, 1008-1009 (*The Meadows*) [recognizing test articulated in *Memorial Hospital* and holding ERISA does not preempt "claims by a third-party who sues an ERISA plan not as an assignee of a

---

7      A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." (29 U.S.C. § 1002(8).)

8      The Fifth Circuit ordered a rehearing en banc in *Access Mediquip* (see *Access Mediquip LLC v. United Healthcare Ins. Co.* (5th Cir. 2012) 678 F.3d 940) and thereafter in a per curiam opinion reinstated the original panel decision and overruled three earlier Fifth Circuit decisions to the extent inconsistent with *Access Mediquip*'s reasoning. (*Access Mediquip LLC v. United Healthcare Ins. Co.* (5th Cir. 2012) 698 F.3d 229, 230.)

9

purported ERISA beneficiary, but as an *independent* entity claiming *damages*"];[9] *Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.* (10th Cir. 1991) 944 F.2d 752, 756 ["An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan. Preemption in this case would stretch the 'connected with or related to' standard too far."]; *Lordmann Enters. v. Equicor, Inc.* (11th Cir. 1994) 32 F.3d 1529, 1534 ["[f]inding the *Memorial Hospital* court's reasoning persuasive, we hold that ERISA does not preempt a health care provider's negligent misrepresentation claim against an insurer under an ERISA plan"]; see generally Wiggins, *Medical Provider Claims: Standing, Assignments, and ERISA Preemption* (2012) 45 John Marshall L.Rev. 861, 884-888.) These decisions, although not binding on this court, persuasively articulate a valid distinction between claims by a plan participant for additional benefits and claims by third-party medical providers.

In *Memorial Hospital* the plaintiff hospital relied on representations by the defendant employer and the employer's health insurer that a new employee's wife was covered by the insurance plan and "would not have extended treatment to her without such an assurance of payment." (*Memorial Hospital*, *supra*, 904 F.2d at p. 238.) Upon request for payment of $110,829.40, the health insurer informed Memorial Hospital that the employee's wife was not eligible for benefits on the date of her hospitalization—the

---

[9]       In *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, *supra*, 581 F.3d at p. 946 the Ninth Circuit cited *The Meadows* as one of the cases that had contributed to the confusion between complete preemption and conflict preemption because the court in "dealing with complete preemption under § 502(a) [has] used the terminology 'relate to' even though that terminology is relevant to conflict preemption under § 514(a) rather than complete preemption under § 502(a)." While the court may have erroneously applied the test for conflict preemption to a case involving complete preemption, its articulation and analysis of the conflict preemption test, predicated on *Memorial Hospital*, was sound. Moreover, in *Cedars-Sinai Med. Ctr. v. Nat. League of Postmasters* (9th Cir. 2007) 497 F.3d 972, a case analogous to the instant case, the Ninth Circuit held a hospital's state law claims were not preempted by the Federal Employee Health Benefits Act (5 U.S.C. § 8901 et seq.), citing *Memorial Hospital* and *The Meadows* as support. (*Cedars-Sinai*, at pp. 978-979.)

10

employee's 30-day service requirement not yet having been fulfilled—and denied the claim. Memorial Hospital filed a state court action against the employer and insurer asserting several state law claims including breach of contract as an assignee of a plan beneficiary seeking recovery of plan benefits and deceptive and unfair trade practices under the Texas Insurance Code, essentially a codified claim for negligent misrepresentation, in its independent capacity as a third-party health care provider. After the lawsuit was removed to federal court, the district court dismissed the claims for breach of contract and deceptive trade practices on preemption grounds and remanded the remaining pendent state law claims to state court. (*Id.* at pp. 238-239.) The Court of Appeals for the Fifth Circuit affirmed the portion of the judgment dismissing the breach of contract claim, but vacated that portion of the judgment dismissing the deceptive trade practices claims and remanded it to the state court. (*Id.* at p. 239.)

In holding the deceptive trade practices claim was not preempted, the *Memorial Hospital* court, reading "the preemption clause of ERISA . . . in context with the Act as a whole, and with Congress's goal in creating an exclusive enclave for the regulation of benefit plans,"[10] found binding authority on preemption of state law claims under ERISA had "at least two unifying characteristics:  (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and

---

10      Although *Travelers* is often cited as the case in which the Supreme Court recognized the need for more than "uncritical literalism" in construing the "relate to" phrase, in cases decided prior to *Travelers* the Court had in fact analyzed not only the language of section 514(a) but also the purpose of the preemption provision and the regulatory scope of ERISA as a whole in deciding preemption cases. (See, e.g., *Fort Halifax Packing Co. v. Coyne* (1987) 482 U.S. 1, 19 [107 S.Ct. 2211, 96 L.Ed.2d 1] ["[t]he argument that ERISA pre-empts state laws relating to certain employee benefits, rather than to employee benefit *plans*, is refuted by the express language of the statute, the purposes of the pre-emption provision, and the regulatory focus of ERISA as a whole"].) Intermediate federal appellate courts, like the Fifth Circuit in *Memorial Hospital*, did as well.

beneficiaries." (*Memorial Hospital*, *supra*, 904 F.2d at pp. 244-245.)  Applying this two-part test, the court concluded "these two factors are not sufficiently implicated in the present case to warrant a finding that Memorial's state law claim is preempted." (*Ibid.*)[11]

With respect to the first factor the court described the "commercial realities" health care providers face:  Health care is expensive, and providers have limited budgets for indigent care and losses due to nonpayment.  They understandably need to determine before deciding to treat a patient whether they can reasonably expect payment and must rely on an insurance company or plan administrator's representations. (*Memorial Hospital*, *supra*, 904 F.2d at p. 246.)[12]  The court explained, "If providers have no recourse under either ERISA or state law in situations such as the one sub judice (where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage), providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered.  This does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA." (*Id.* at pp. 247-248.) Moreover, "[i]f a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan.  If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received.  The only question is whether the risk

---

[11]    Recognizing it was adopting a different analysis for third-party claims predicated on misrepresentations from that it had used in evaluating similar claims by plan participants, the *Memorial Hospital* court acknowledged it had held "ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled." (*Memorial Hospital*, *supra*, 904 F.2d at p. 245.)

[12]    In the instant matter the amended complaint alleged the Plan refused to provide Silver with policyholders' documents that would have permitted it to evaluate potential coverage.

12

of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." (*Id.* at p. 246.)[13]

With respect to the second factor the court explained it had previously found "the most important factor for a court to consider in deciding whether a state law affects an employee benefit plan 'in too tenuous, remote, or peripheral a manner to be preempted' is whether the state law affects relations among ERISA's named entities. 'Courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.'" (*Memorial Hospital*, *supra*, 904 F.2d at p 249.) Because third-party providers are not parties to the bargain "struck in ERISA" between plaintiffs and employers, the court could not "believe that Congress intended the preemptive scope of ERISA to shield welfare plan beneficiaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan." (*Id.* at pp. 249-250.)

We join those courts that have found the *Memorial Hospital* court's approach persuasive in analyzing whether claims brought by third parties in their independent capacity are preempted. Although the trial court in the instant action cited *The Meadows*, in which the Ninth Circuit recognized the two-part test articulated in *Memorial Hospital*,

---

13      Although the issue in *Memorial Hospital* was one of no coverage whatsoever, the Fifth Circuit in *Transitional Hosps. Corp. v. Blue Cross & Blue Shield, Inc.* (5th Cir. 1999) 164 F.3d 952, 955 held the medical provider's claims for negligent misrepresentation as to the amount of reimbursement for a patient with coverage were not preempted.

as well as the Fifth Circuit's decision in *Access Mediquip* applying *Memorial Hospital*, the court failed to appreciate the distinctly different analysis used by these federal courts in considering independent claims asserted by third-party medical providers who had been directly misled by plan administrators, as alleged here, and those by plan participants demanding benefits not specified in their plans. Thus, after citing generally to third-party cases, rather than use the *Memorial Hospital* test they discuss, the trial court placed primary reliance on the "but for" test articulated in *Dishman v. UNUM Life Ins. Co. of America* (9th Cir. 2001) 269 F.3d 974, as restated in *Rose v. HealthComp, Inc.* (E.D. Cal., Aug. 10, 2015, No. 1:15-CV-00619-SAB) 2015 U.S. Dist. Lexis 104706 to conclude Silver's claims were preempted: "The Ninth Circuit requires that the ERISA plan must be the 'but for' cause of the harm alleged for the cause of action to be preempted by ERISA. Generally in applying the 'but for' test courts look to whether the state law cause of action would remain 'but for' the denial of the claim for benefits . . . ." (*Rose*, at pp. *21-22, citing *Dishman* at p. 984.) Both *Dishman* and *Rose*, however, involved state law tort claims by plan participants (for invasions of privacy),[14] not causes of action arising from misstatements to third-party providers as in *Memorial Hospital*, *Meadows* and *Access Mediquip*.[15] Applying the *Memorial Hospital* test, we conclude Silver's contract and quasi-contract claims are not preempted.

---

[14]  *Rose* was not even a conflict preemption case; the issue was whether the defendant—the third-party administrator for the health care plan provided by plaintiff's employer—had properly removed the state law complaint alleging invasion of privacy and unfair business practices to federal court—that is, a question of complete preemption. (*Rose v. Healthcomp, Inc.*, *supra*, at p. *6.)

[15]  The trial court limited its description of *Access Mediquip* to the portion of the opinion finding the provider's unjust enrichment and quantum meruit claims were preempted. It omitted any reference to the basic holding of the case, applying *Memorial Hospital* and concluding the provider's claims for negligent misrepresentation, promissory estoppel and violations of the Texas Insurance Code were not preempted by ERISA.

14

e. *The causes of action for breach of oral contract, quantum meruit and promissory estoppel are not preempted*

The gravamen of Silver's causes of action for breach of oral contract, quantum meruit and promissory estoppel is that the Plan orally agreed to pay Silver for health care services in the specified amounts, authorized the provision of those services and then failed to pay as agreed. Although Silver has not asserted a cause of action for negligent misrepresentation, its claims are indistinguishable from those found not to be preempted by *Memorial Hospital* and those courts that have applied the two-part *Memorial Hospital* test. Like those cases, Silver's three contract/quasi-contract causes of action do not address an area of exclusive federal concern. Silver is not, as the Plan argues, seeking compensation for the Plan's decisions to deny coverage under the terms of an ERISA plan; his alleged right to reimbursement does not depend on the Plan's terms. Rather, the claims are predicated on a garden-variety failure to make payment as promised for services rendered. To be sure, the claims would not exist but for an ERISA plan and are predicated on somebody's interpretation of the plan. But the fact an ERISA plan is an initial step in the causation chain, without more, is too remote of a relationship with the covered plan to support a finding of preemption. (Cf. *Dishman v. UNUM Life Ins. Co. of America*, *supra*, 269 F.3d at p. 984 ["Obviously, at some level Dishman's tort claim relates to the plan. That cannot be denied. But that cannot be the end of the analysis, either, for as we know, 'pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'"].)[16]

---

[16]  As the trial court pointed out, the Fifth Circuit in *Access Mediquip LLC v. United Heathcare Ins. Co.*, *supra*, 662 F.3d 376, held the provider's unjust enrichment and quantum meruit claims were preempted (while holding the provider's negligent misrepresentation and promissory estoppel claims were not). Unlike Silver's quantum meruit claim, however, which is based on allegations the Plan directly requested Silver's services and expressly promised to pay for them (and, therefore, is merely an alternate claim for breach of oral contract), the *Access Mediquip* common counts were not premised on misstatements from the plan administrator at all. Instead, they depended on allegations the ERISA plan would have been obliged to reimburse other providers had the

15

Primarily citing several district court cases, the Plan argues these courts have found a medical provider's state law contract and quasi-contract claims premised upon an ERISA plan's preauthorization of services preempted because the claims are inextricably intertwined with a plan's terms and denial of benefits. None of these cases is persuasive. Most do not apply the *Memorial Hospital* test, instead superficially relying on *Pilot Life*, which, as discussed, does not address the circumstances unique to third-party provider claims. (See, e.g., *Alcalde v. Blue Cross & Blue Shield of Fla., Inc.* (S.D. Fla., Nov. 18, 2014, No. 1:14-CV-23103-UU) 2014 U.S. Dist. Lexis 168526; *Miami Children's Hosp., Inc. v. Kaiser Found. Health Plan, Inc.* (S.D. Fla., May 29, 2009, No. 08-23218-CIV-MORENO) 2009 U.S. Dist. Lexis 51696; *Our Lady of Lourdes Health Sys. v. HHI Hotels, Inc.* (D. N.J., Dec. 1, 2009, No. 09-1875 (JBS/JS) 2009 U.S. Dist. Lexis 111875.)

One case that does cite *Memorial Hospital* is inapposite. In *Parkside Lutheran Hosp. v. R.J. Zeltner & Assoc. Inc.* (N.D. Ill. 1992) 788 F.Supp. 1002 the district court acknowledged "courts have recognized that where the plaintiff is a third-party health care provider there are certain situations in which preemption will not occur." After describing *Memorial Hospital* and the Tenth Circuit decision following it, *Hospice of Metro Denver v. Group Health Ins.*, *supra*, 944 F.2d 752, the court in *Parkside Lutheran* limited the breadth of those cases with the caveat, "where the representations made by an insurer to a third-party provider would act to modify the terms of a group insurance plan—e.g., to allow receipt of benefits that were no longer available under the explicit terms of the plan—the third-party's claim does 'relate to' the plan and hence is

_____

plan obtained the services from them. As the court explained, "Access can therefore recover under these claims only to the extent that the patients' ERISA plans confer on their participants and beneficiaries a right to coverage for the services provided." Such claims, the court concluded, are preempted under the test in *Memorial Hospital*, *supra*, 904 F.2d 236 and *Transitional Hosps. Corp. v. Blue Cross & Blue Shield, Inc.*, *supra*, 164 F.3d 952. (See *Access Mediquip*, at p. 386.)

16

preempted by ERISA." (*Parkside Lutheran Hosp.*, at p. 1006.) We need not decide whether we agree with that caveat; those facts are simply not present in the case at bar.[17]

### f. *The cause of action for interference with contractual relations is preempted*

Silver's claim for interference with contractual relations is predicated on the EOB the Plan sent to policyholders stating the "Total Patient Responsibility" for the amount charged by Silver was zero. The amended complaint alleged the Plan knew Silver had separate agreements with policyholders to pay whatever portion of the charges the Plan did not cover, and, "[i]n sending out EOBs to the Patients, [the Plan] could not have any other motive than to prevent completion and performance of the Patient Medical Provider Agreement between Medical Provider and Patient. The EOB provided by [the Plan] to Patient clearly states that Patient should not pay for the services and procedures Patient received from Medical Provider." The amended complaint further alleged, "Patient relies on [the Plan] as the payor of his/her policy of health insurance and when [the Plan] indicates to Patients[s] that they should not do something related to healthcare payments Patient will rely and did rely on that statement in not paying Medical Provider and has not paid Medical Provider."

The Plan is required under ERISA to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." (29 U.S.C. § 1133.) Although Silver acknowledges the Plan sent policyholders EOBs in conformity with its obligations under ERISA, it argues its claim is based upon the Plan's extraneous tortious conduct of improperly directing policyholders in the EOB to disregard their financial obligations to Silver.

---

17      The Plan contends we may affirm the trial court's order on the alternative ground the amended complaint fails to allege facts sufficient to state a cause of action. This is an analysis more appropriately performed by the trial court in the first instance if the Plan refiles its demurrer to the second, third and fourth causes of action on this ground.

17

Silver's argument to the contrary notwithstanding, the Plan's allegedly tortious conduct cannot be separated from the Plan's discharge of its obligations to notify participants of an adverse determination under ERISA. The Code of Federal Regulations "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries" including requiring the notification of an adverse benefit determination to include "[r]eference to the specific plan provisions on which the determination is based" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." (29 C.F.R. § 2560.503-1(a), (g).) The Plan's alleged interference with contractual relations was accomplished not by an individual advising policyholders not to pay Silver, but instead by the manner in which its preprinted EOB was designed, completed and potentially interpreted, that is, by including a "Total Patient Responsibility" designation. Whether use of the form essentially constituted a tort—a question with wide-ranging implications for any plan using a similar form—is precisely the kind of decision that conflict preemption is intended to eliminate: one that could result in inconsistent directives among states and increased administrative and financial costs of complying with ERISA. Applying *Memorial Hospital*, the cause of action addresses an area of exclusive federal concern—the manner in which adverse determinations are communicated to plan participants—and directly affects the relationship between the plan and participants. Accordingly, the cause of action is preempted. On remand the trial court should enter a new order sustaining the Plan's demurrer to Silver's first cause of action as preempted by ERISA.

18

## DISPOSITION

The order dismissing the action is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.  Silver is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.